EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Uzziel Ocasio Méndez<br><br>Recurrido<br><br>v.<br><br>Kelly Services Inc.; Dupont Agricultural Corp.<br><br>Peticionario | Certiorari<br><br>2005 TSPR 4<br><br>163 DPR ____ |

Número del Caso: CC-2003-122

Fecha: 20 de enero de 2005

Tribunal de Circuito de Apelaciones:

Circuito Regional III

Juez Ponente:

Hon. Ismael Colón Birriel

Abogado de la Parte Peticionaria:

Lcdo. Jorge A. Antongiorgi-Betancourt

Abogado de la Parte Recurrida:

Lcdo. Ángel M. Bonnet Rosario

Materia: Despido Ilegal, F.S.E. y Represalias

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Uzziel Ocasio Méndez

    Recurrido

        vs.                    CC-2003-122    CERTIORARI

Kelly Services Inc.; Dupont
Agricultural Corp.

    Peticionario

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

En San Juan, Puerto Rico, a 20 de enero de 2005

El recurrido, Señor Lizziel Ocasio Méndez, por sí y en representación de la Sociedad Legal de Gananciales que compone con su esposa, la Sra. Juanita Ríos Menéndez, presentó el 26 de noviembre de 2001 una querella, ante el Tribunal de Primera Instancia, Subsección de Distrito, Sala de Camuy, al amparo del procedimiento sumario que establece la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 L.P.R.A. sec. 3118 *et seq*., contra las empresas Kelly Services Inc.[1] y el aquí

---

[1] Kelly Services, Inc. es una compañía que ofrece servicios en Puerto Rico desde 1964 a otras compañías que tengan necesidades de personal en posiciones temporeras a corto y largo plazo. Véase http://www.kellyservices.com.pr/eprise/main/web/pr/services/en/index.html

peticionario, en adelante Dupont Agricultural Caribe Industries.

El Sr. Ocasio alegó en la querella que tenía un contrato de empleo sin término fijo con la compañía Kelly Services Inc. y que como parte de su empleo, la compañía Kelly Services asignó al Sr. Ocasio a trabajar como operador en la fábrica de Dupont Agricultural en el pueblo de Manatí donde devengaba un salario de $5.50 la hora. Alegó, además, que el 25 de marzo de 2000, sufrió un accidente en el trabajo al ser expuesto a material tóxico, por lo que el 27 de marzo de 2000, fue referido al Fondo del Seguro del Estado. Según alega, estuvo bajo tratamiento en el Fondo del Seguro del Estado hasta el 30 de marzo de 2000, fecha en que fue dado de alta con derecho a tratamiento. Luego de haber sido dado de alta, el Sr. Ocasio fue a Dupont Agricultural, para retomar su trabajo, pero éstos se negaron a reponerlo en su puesto.

A la luz de estos hechos, el Sr. Ocasio sostuvo que la negativa de reposición constituyó un despido ilegal bajo el Artículo 5A de la Ley Núm. 45 de 18 de abril de 1935, según enmendada, conocida como la "Ley de Compensaciones por Accidentes del Trabajo", 11 L.P.R.A. sec. 7 y el Artículo 2 de la Ley Núm. 115 de 20 de diciembre de 1991, conocida como la "Ley de Represalias", 29 L.P.R.A. sec. 194a. Solicitó que se condenara a las partes co-querelladas, de forma solidaria, a pagar: (1) la suma de $946 por concepto de mesada;(2) $34,232 por

concepto de salarios dejados de percibir; (3) ordenar la reposición del querellante en su empleo; (4) pagar $50,000 en daños y perjuicios; (5) y condenar al pago de 25% de las sumas concedidas, en concepto de honorarios de abogado, las costas y gastos de litigio.

Así las cosas, Kelly Services Inc. y Dupont Agricultural fueron emplazadas el 3 de abril de 2002.[2] El 5 de abril de 2002, Kelly Services Inc., presentó ante el Tribunal de Primera Instancia una moción de prórroga solicitando que se le otorgaran treinta (30) días para contestar, alegando que, como los hechos alegados se remontaban al 2000, tenían que obtener ciertos documentos que estaban inactivos. En la alternativa, negaron todas las alegaciones de la querella.

El querellante, en o cerca del 17 de abril de 2002[3], presentó una moción en solicitud de anotación de rebeldía y para que se dictara sentencia, alegando que ya había transcurrido el término de diez (10) días que dispone la sección 3 de la Ley Núm. 2, ante, como término para radicar la contestación a la querella, sin que la co-querellada Dupont Agricultural hubiera presentado solicitud de prórroga juramentada, de conformidad con la disposición legal antes citada. De la misma manera,

---

[2] El mandamiento para emplazar fue expedido el 4 de marzo de 2002.
[3] Esta fecha es la que aparece en la moción. Del expediente no surge la fecha exacta que fue radicada la misma ante el Tribunal de Primera Instancia.

presentó una moción en oposición a solicitud de prórroga, solicitando que se declarara no ha lugar a la moción de Kelly Services Inc., y se dictara sentencia en rebeldía, concediendo el remedio solicitado.

La co-querellada Kelly Services presentó su contestación a la querella el 18 de abril de 2002. De la misma manera, Dupont Agricultural, presentó el 10 de mayo de 2002, treinta y siete (37) días desde que fuera emplazado, la Contestación a la Querella y una "Moción de Desestimación; Solicitud para que el Presente Caso se Litigue bajo las Reglas de Procedimiento Civil Ordinarias y de Prórroga; y Oposición a Moción para que se Anote Rebeldía." En esta última alegó, en esencia, que no se había presentado la contestación a la querella debido a que la gerencia de Dupont Agricultural descansó en la creencia de que debido a la relación contractual existente con Kelly Services Inc., esta última, proveería representación legal a ambas compañías. Además, sostuvo que el procedimiento sumario no le es de aplicación a Dupont Agricultural, toda vez que el patrono de Ocasio Méndez era Kelly Services, y no Dupont; y que la responsabilidad de reposición en el empleo recaía en Kelly.

El 18 de julio de 2002, el Tribunal de Primera Instancia dictó una orden declarando no ha lugar a la moción de prórroga de Kelly Services y denegando su contestación a la querella porque fue presentada fuera del

término establecido en la Ley Núm. 2, ante. Inconforme con dicha decisión, Kelly Services recurrió-vía *certiorari*-al Tribunal de Apelaciones el 20 de agosto de 2002. El 5 de septiembre de 2002, el foro apelativo intermedio dictó sentencia revocatoria, ordenándole al Tribunal de Instancia que permitiera la contestación a la querella presentada por Kelly Services, sentencia que advino final y firme.

Luego de varios trámites procesales, el 16 de septiembre de 2002, Dupont Agricultural presentó una "Moción Reiterando Solicitud para que el Presente Caso se Litigue bajo las Reglas de Procedimiento Civil Ordinarias y/o en Solicitud de Desestimación." Finalmente, el 26 de septiembre de 2002, el Tribunal de Primera Instancia dictó Sentencia Parcial en Rebeldía en contra de Dupont Agricultural, por éste no haber presentado la contestación a la querella ni haber solicitado prórroga debidamente juramentada dentro del término establecido en las disposiciones de la Ley Núm. 2, ante. Condenó a Dupont a: (1) pagar $34,232 acumulados hasta el 5 de noviembre de 2000, por salarios dejados de percibir, más $88.00 por cada día que pase hasta que Ocasio Méndez sea repuesto en su empleo; (2) ordenó restituir a Ocasio Méndez en su trabajo, y no tomar actos de represalia por la radicación de la querella, o cesar los mismos; (3) el pago de 25% de

las sumas indicadas por concepto de honorarios de abogado, gastos, más intereses al tipo legal.[4]

Inconforme con tal determinación, Dupont Agricultural presentó el 10 de octubre de 2002 una petición de *certiorari* ante el Tribunal de Apelaciones imputándole al Tribunal de Primera Instancia haber incidido al negarse tramitar el caso por el procedimiento ordinario y no aceptar su contestación a la querella.

El 22 de enero de 2003, el Tribunal de Apelaciones emitió una resolución denegando la petición de *certiorari* de Dupont Agricultural, fundamentando su determinación en que los errores alegados no fueron cometidos, ya que bajo la Ley Núm. 2 el Tribunal de Instancia tenía limitada su discreción para permitir la contestación a la querella. Asimismo, concluyó que la sentencia en rebeldía procedía en contra de Dupont Agricultural, ya que bajo la Ley 26 de 22 de julio de 1992, conocida como la "Ley de Compañías de Servicios Temporeros", 29 L.P.R.A. sec. 575 *et seq.*, ambas compañías responden solidariamente respecto a la legislación que obliga al patrono a reservar el empleo.

Aun inconforme, Dupont Agricultural recurrió oportunamente ante este Tribunal, *vía certiorari*, imputándole al foro apelativo intermedio haber errado al:

---

[4] El Tribunal de Instancia no dictó sentencia en cuanto a la partida de daños y perjuicios porque necesitaba recibir prueba para determinar la cantidad de los daños. Determinó que lo procedente era señalar una vista en rebeldía exclusivamente para Dupont Agricultural y así determinar la cuantía de los daños.

> ...confirmar la Sentencia Parcial del Tribunal de Primera Instancia permitiendo que la querella conteniendo múltiples partes y causa de acción fuera tramitada mediante el proceso sumario.

> ...confirmar la Sentencia Parcial del Tribunal de Primera Instancia en cuanto a la procedencia de la anotación y sentencia en rebeldía en contra de la compareciente.

Expedimos el recurso. Contando con la comparecencia de las partes, y estando en condición de resolver el mismo, procedemos a así hacerlo.

I

A

La Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 L.P.R.A. sec. 3118 *et seq.*, creó un mecanismo procesal con el propósito de lograr una rápida consideración y adjudicación de querellas presentadas por empleados u obreros contra sus patronos. Lucero Cuevas v. San Juan Star Company, res. el 16 de mayo de 2003, 2003 T.S.P.R. 80; Ríos Moya v. Industrial Optics, res. el 21 de agosto de 2001, 2001 T.S.P.R. 117; Ruiz Rivas v. Colegio San Agustín, res. el 5 de octubre de 2000, 2000 T.S.P.R. 147; Berríos Heredia v. González, res. el 15 de junio de 2000, 2000 T.S.P.R. 87; Rivera Rivera v. Insular Wire Products Corp., 140 D.P.R. 912 (1996).

El alcance de la Ley Núm. 2 se extiende a varios estatutos laborales. Entre estos, se encuentran principalmente las querellas por reclamaciones de salarios

y beneficios; las instadas por despido injustificado bajo la Ley Núm. 80 de 30 mayo de 1976, 29 L.P.R.A. secs. 185(a) *et seq.*; las reclamaciones bajo el Art. 5A de la "Ley de Compensaciones por Accidentes del Trabajo", Ley Núm. 45 de 18 de abril de 1935, según enmendada, 11 L.P.R.A. secs. 1 *et seq.*; las reclamaciones al amparo del Art. 1 de la "Ley Antidiscrimen", Ley Núm. 100 de 30 de junio de 1959, 29 L.P.R.A. sec. 146; y las reclamaciones al amparo de la Ley Núm. 115 de 20 de diciembre de 1991, conocida como "Ley de Represalias", 29 L.P.R.A. sec. 194 *et seq.*[5] *Véase* Berríos Heredia v. González, ante; Marín v. Fastening Systems, Inc., 142 D.P.R. 499 (1997); Rivera Rivera v. Insular Wire Products Corp., ante.

Conforme a la naturaleza de este tipo de reclamación, la Ley Núm. 2 provee un procedimiento expedito para así

---

[5] Otros ejemplos de reclamaciones que por disposición estatutaria se pueden presentar bajo el procedimiento de la Ley Núm. 2 son la Ley Núm. 379 de 15 de mayo de 1948, 29 L.P.R.A. sec. 282 (Jornada de trabajo); Ley Núm. 73 de 4 de mayo de 1931, 29 L.P.R.A. secs. 187 y 188 (Gravamen por labor de operaciones); Ley Núm. 42 de 30 de mayo de 1972, 29 L.P.R.A. sec. 175(Deducción salarios cooperativos); Ley Núm. 428 de 15 de mayo de 1950, 29 L.P.R.A. 690 (Seguro social choferil); Ley Núm. 138 de 26 de junio de 1968, 9 L.P.R.A. sec. 2054 *et seq.* (Por despido, empleado acogido a beneficios de A.C.A.A.); Ley Núm. 139 de 26 de junio de 1968, 11 L.P.R.A. sec. 201 *et seq.* (Por despido, empleado acogido a beneficios de S.I.N.O.T.); Ley Núm. 141 de 29 de junio de 1969, 29 L.P.R.A. sec. 2001 *et seq.* (Ingreso garantizado para los trabajadores de la industria azucarera en su fase agrícola); Ley Núm. 142 de 19 de junio de 1969, 29 L.P.R.A. sec. 2021 *et seq.* (Ingreso garantizado-agrícola); Ley Núm. 48 de 29 de mayo de 1973, 29 L.P.R.A. secs. 153-154 (Despido para sustituir por extranjero ilegal).

alcanzar los propósitos legislativos de proteger el empleo, desalentar el despido sin justa causa y proveer al obrero así despedido recursos económicos para su subsistencia mientras consigue un nuevo empleo. Lucero Cuevas v. San Juan Star Company , ante; Ruiz Rivas v. Colegio San Agustín, ante; Rodríguez Aguiar v. Syntex, 148 D.P.R. 604, 612 (1999); Piñero González v. A.A.A., 146 D.P.R. 890, 897 (1998). Siendo el procedimiento sumario al amparo de la Ley 2 uno de carácter reparador, éste tiene que interpretarse liberalmente a favor del empleado. Piñero González v. A.A.A., ante.

A tenor con los propósitos antes expuestos, el trámite procesal dispuesto por la Asamblea Legislativa, en la Ley Núm. 2, ciertamente es más oneroso para el patrono. Ruiz Rivas v. Colegio San Agustín, ante. Por ejemplo, dicha Ley dispone términos cortos para contestar la querella, criterios estrictos para conceder una prórroga para contestar la querella, limitaciones sobre el uso de descubrimiento de prueba, etc. *Véase*: sección 3 de la Ley 2, ante. Sin embargo, las disposiciones de la Ley Núm. 2 le conceden al patrono las oportunidades básicas para defenderse, cumpliendo así con las garantías del debido proceso de ley. Landrum Mills Corp. v. Tribunal Superior, 92 D.P.R. 689, 692 (1965).

No obstante lo anterior, hemos resuelto que los tribunales de instancia, ante un oportuno planteamiento al respecto, tienen discreción para que, luego de hacer un

análisis cuidadoso de la naturaleza de la reclamación y de los intereses involucrados, determinen que la querella presentada por el obrero sea tramitada por la vía ordinaria. Berríos Heredia v. González, ante; De este modo, hemos señalado que para que los tribunales de instancia puedan hacer una determinación en torno a cuál procedimiento es el adecuado, deben hacer un "justo balance entre los intereses del patrono y los del obrero querellante, a la luz de las circunstancias específicas de las reclamaciones en la querella." Berríos Heredia v. González, ante; Rivera Rivera v. Insular Wire Products Corp., ante.

Ahora bien, tal determinación no debe hacerse livianamente. Una mera alegación de la parte querellada en términos de que la reclamación instada en su contra es compleja no justifica la conversión del proceso en uno ordinario. Por lo tanto, las partes deben exponer todas las circunstancias pertinentes del caso para que sean examinadas por el tribunal y de esta manera éste pueda estar en posición de hacer una determinación sobre si encauza el procedimiento por la vía sumaria u ordinaria. Berríos Heredia v. González, ante; incluso, el tribunal de instancia, de estimarlo necesario, podrá celebrar una vista para dilucidar esta controversia. Ibíd.

En resumen, ante un planteamiento oportuno al respecto, el tribunal de instancia, luego de hacer un análisis ponderado de los intereses de las partes en el

caso y cuando la justicia así lo requiera, podrá ordenar que se tramite la reclamación por la vía ordinaria. En dichos casos, este Tribunal limitará su función revisora a determinar si el Tribunal de Instancia ha abusado de su discreción al así actuar.

B

Debe señalarse, por otro lado, que la Ley Num. 2 provee "penalidades" por incurrir en conducta que atente contra el carácter sumario del procedimiento que la misma establece. Rodríguez v. Syntex P.R., Inc., 148 D.P.R. 604, 613 (1999). Conforme a ello, la sec. 3 de la Ley Núm. 2, ante, dispone:

> El secretario del tribunal notificará a la parte querellada con copia de la querella, apercibiéndole que deberá radicar su contestación por escrito, con constancia de haber servido copia de la misma al abogado de la parte querellante o a ésta si hubiere comparecido por derecho propio, dentro de diez (10) días después de la notificación, si ésta se hiciere en el distrito judicial en que se promueve la acción, y dentro de quince (15) días en los demás casos, y apercibiéndole, además, que si así no lo hiciere, se dictará sentencia en su contra, concediendo el remedio solicitado, sin más citarle ni oírle. Solamente a moción de la parte querellada, la cual deberá notificarse al abogado de la parte querellante o a ésta si compareciere por derecho propio, en que se expongan bajo juramento los motivos que para ello tuviere la parte querellada, podrá el juez, si de la faz de la moción encontrara causa.

Asimismo, la Sec. 4 del mismo cuerpo legal, dispone, en lo pertinente, que:

> Si el querellado no radicara su contestación a la querella en la forma y el término dispuesto en la sec. 3120 de este título, el juez dictará sentencia contra el querellado, a instancias del querellante, concediendo el remedio solicitado... 32 L.P.R.A. sec. 3121.

Hemos reiterado en varias ocasiones que, como norma general, los tribunales tienen la obligación de darle estricto cumplimiento al procedimiento sumario de la ley Núm. 2 y que no tienen jurisdicción para conceder prórrogas en los casos en los que no se cumplan con las disposiciones de ésta. Valentín v. Housing, 146 D.P.R. 712 (1998); Mercado Cintrón v. Zeta Communications, Inc., 135 D.P.R. 737 (1994). Como regla general, este mandato legislativo no está sujeto a la discreción del tribunal. Mercado Cintrón v. Zeta Communications, Inc., ante.

De lo anterior se desprende claramente que el incumplimiento con los términos para contestar una querella exige que el tribunal conceda el remedio solicitado por la parte querellante, a menos que dentro de dicho término la parte querellada presente una solicitud de prórroga juramentada en la que exponga los hechos que la justifican. Valentín v. Housing, ante. Ello no obstante, debe recordarse que "la Ley Núm. 2 no puede ser interpretada ni aplicada en el vacío y, aun ante casos que parezcan ser iguales, en ocasiones, los hechos de los mismos requerirán tratamientos distintos en aras de conseguir un resultado justo". Lucero Cuevas v. San Juan Star Company, ante.

Por esta razón, hemos reconocido que existen casos excepcionales en que se justifica flexibilizar la aplicación de la Ley Núm. 2. Un ejemplo de ello, es, cuando surgen del mismo expediente las causas que justifican la dilación en la presentación de la contestación de una querella. Valentín v. Housing, ante. En estas circunstancias, el tribunal puede, *motu propio* y en el ejercicio de su discreción, concederle a la parte querellada, una extensión al término para contestar la querella si entiende que al así hacerlo evitará un fracaso de la justicia. *Ibíd.*

Hemos señalado que la Sec. 4 de la Ley Núm. 2, ante, limita la discreción que al amparo de la Regla 45 de Procedimiento Civil, 32 L.P.R.A. Ap. III R. 45, tiene un juez para decidir si el caso debe o no tramitarse en rebeldía.[6] Rivera Rivera v. Insular Wire Products Corp., ante. Al amparo de la Ley Núm. 2, si el querellado no presenta contestación en la forma y manera que se dispone

---

[6] Las disposiciones y normas interpretativas de la Regla 45 de Procedimiento Civil, 32 L.P.R.A. Ap. III R. 45, serán aplicables en todo aquello en que no estén en conflicto con las disposiciones o con el carácter sumario del procedimiento de la Ley Núm. 2. Díaz v. Hotel Miramar, Corp., 103 D.P.R. 314 (1975). *Véase* también la Sec. 3 de la Ley Núm. 2, ante, que dispone:

> En los casos que se tramiten con arreglo a las secs. 3118 a 3132 de este título, se aplicarán las Reglas de Procedimiento Civil en todo aquello que no esté en conflicto con las disposiciones específicas de la misma o con el carácter sumario del procedimiento establecido por las secs. 3118 a 3132 de este título...

en la Sec. 3 de la ley, *ante*, el tribunal tendrá que ver el caso en rebeldía. *Ibíd*. Por lo tanto, debemos recurrir a las disposiciones específicas y normas interpretativas sobre la sentencia en rebeldía bajo la Regla 45 de Procedimiento Civil, *ante*, que no estén en conflicto con la Ley Núm. 2.

La Regla 45.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone que procederá la anotación de rebeldía "cuando una parte contra la cual se solicite una sentencia que concede un remedio afirmativo haya dejado de presentar alegaciones o de defenderse en otra forma según lo dispuesto en dichas reglas." Dicho remedio opera en dos situaciones, a saber: cuando el demandado no cumple con el requisito de comparecer a contestar la demanda y/o a defenderse en otra forma prescrita por ley, no presentando alegación alguna contra el remedio solicitado; o en las situaciones en que una de las partes en el pleito ha incumplido con algún mandato del tribunal, lo que motiva a éste a imponerle la rebeldía como sanción. Supermercado Grande, Inc. v. Alamo Pérez, res. 12 de septiembre de 2002, 2002 T.S.P.R. 124.

Sobre la primera, sabido es que "el propósito de estar sujeto a esta anotación es como disuasivo contra aquellos que puedan recurrir a la dilación como un elemento de su estrategia en la litigación." J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, San Juan, Ed. Luiggi Abraham, 2000, T. II, pág. 750. El trámite en

rebeldía se fundamenta en "la obligación de los tribunales de evitar que la adjudicación de causas se paralicen simplemente por la circunstancia de que una parte opte por detener el proceso de litigación", Continental Ins. Co. v. Isleta Marina, 106 D.P.R. 809, 817 (1978). Conforme a ello, "el mismo opera como remedio coercitivo contra una parte adversaria la cual, habiéndosele concedido la oportunidad de refutar la reclamación, por su pasividad o temeridad opta por no defenderse." Supermercado Grande, Inc. v. Alamo Pérez, ante.

Hemos reiterado en numerosas ocasiones que la consecuencia jurídica de la anotación en rebeldía es que se admitan como ciertas todas y cada uno de los hechos correctamente alegados. Supermercado Grande, Inc. v. Alamo Pérez, ante; Colón v. Ramos, 116 D.P.R. 258 (1985)

Ahora bien —de conformidad con la Regla 45.2(b) de Procedimiento Civil, ante, y en relación con el descargo de los tribunales de su función adjudicativa en un pleito en rebeldía— hemos expresado que, "el proceso de formar conciencia judicial exige la comprobación de cualquier aseveración mediante prueba." Hernández v. Espinosa, 145 D.P.R. 248, 272 (1998); esto es, si un tribunal necesita, para poder dictar sentencia en rebeldía, comprobar la veracidad de cualquier alegación, o hacer una investigación sobre cualquier otro asunto, deberá celebrar las vistas que estime necesarias y adecuadas. Véase

Audiovisual Lang. v. Sist. Est. Natal Hnos., 144 D.P.R. 563 (1997).

En el caso de Continental Ins. Co. v. Isleta Marina, 106 D.P.R. 809, 817 (1978), expresamos en cuanto a la adjudicación de un pleito en rebeldía, que:

> ...los tribunales no son meros autómatas obligados a conceder indemnizaciones por estar dilucidándose un caso en rebeldía. Para el descargo de tan delicado ministerio, la ley reconoce que el proceso de formar conciencia judicial exige la comprobación "de cualquier aseveración" mediante prueba. A tal efecto, el tribunal "deberá celebrar las vistas que crea necesarias y adecuadas." Y con referencia a una parte demandada en rebeldía-que ha comparecido previamente-le cobija el derecho a conocer del señalamiento, asistir a la vista, contrainterrogar los testigos de la parte demandante, impugnar la cuantía y apelar la sentencia. No renuncia a las defensas de falta de jurisdicción ni de que la demanda no aduce hechos constitutivos de una causa de acción a favor del reclamante. En otras palabras, un trámite en rebeldía no garantiza *per se*, una sentencia favorable al demandante; el demandado no admite hechos incorrectamente alegados como tampoco conclusiones de derecho. (Citas omitidas).[7]

Cónsono con lo anterior, hemos resuelto respecto a las sentencias dictadas en rebeldía, bajo el procedimiento

---

[7] También señalamos en el caso de J.R.T. v. Missy Mfg. Corp., 99 D.P.R. 805,811 (1971), en relación con la Regla 45 de las de Procedimiento Civil que:

> El objeto de estas disposiciones procesales no es conferir una ventaja a los demandantes o querellantes para obtener una sentencia sin una vista en sus méritos. Son normas procesales en beneficio de una buena administración de la función adjudicativa, dirigidas a estimular la tramitación diligente de los casos...

sumario de la Ley Núm. 2, que las alegaciones concluyentes y las determinaciones de derecho, al igual que los hechos alegados incorrectamente, <u>no</u> son suficientes para sostener una determinación de responsabilidad del patrono. <u>Ruiz Rivas</u> v. <u>Colegio San Agustín</u>, ante; <u>Hernández</u> v. <u>Espinosa</u>, 145 D.P.R. 248 (1998).

Aunque el procedimiento sumario de la Ley Núm. 2, limita el uso de las reglas procesales y sitúa al patrono en una posición procesal más onerosa que la del obrero, éste no es, ni puede ser, una "carta en blanco" para la concesión de remedios a obreros que no han <u>justificado adecuadamente</u>, mediante alegaciones o prueba, hechos que avalen su derecho a lo reclamado. <u>Lucero Cuevas</u> v. <u>San Juan Star Company</u>, ante; <u>Ruiz Rivas</u> v. <u>Colegio San Agustín</u>, ante; <u>Hernández</u> v. <u>Espinosa</u>, ante, en la pág. 271; <u>Rivera Rivera</u> v. <u>Insular Wire Products Corp.</u>, ante, en la pág. 928; <u>Díaz</u> v. <u>Hotel Miramar, Corp.</u>, 103 D.P.R. 314, 324 (1975).

En virtud de lo antes expuesto, <u>y como norma general</u>, los tribunales de instancia deben darle estricto cumplimiento a las disposiciones de la Ley Núm. 2; esto es, ante el incumplimiento con los términos dispuestos para contestar la querella, el tribunal deberá concederle al querellante el remedio solicitado. <u>Ello no obstante</u>, un tribunal de instancia no podrá, automáticamente, dictar sentencia en rebeldía cuando de las alegaciones no surja que el querellante tiene derecho al remedio solicitado.

Dicho de otra manera, <u>para que el tribunal pueda dictar sentencia en rebeldía, la parte querellante deberá alegar correctamente los hechos específicos los cuales, de su faz, sean demostrativos que, de ser probados, lo hacen acreedor del remedio solicitado.</u>

## III

De <u>particular relevancia</u> al caso ante nuestra consideración lo son las disposiciones de la Ley 26 de 22 de julio de 1992, conocida como Ley de Compañías de Servicios Temporeros, 29 L.P.R.A. sec. 575 *et seq;* ello en vista de que, durante las últimas décadas, se ha ido generalizando la contratación de empleados mediante el uso de compañías de esta naturaleza.[8] Esta relación laboral se da cuando un patrono, en este caso una compañía cliente, le paga una cantidad de dinero a una compañía de servicio temporero, basado en un por ciento del costo total de su nómina, a cambio de que le supla empleados como patrono oficial. La compañía de servicio temporero es quien, de ordinario, asume la responsabilidad por todas las funciones de personal y nómina, incluyendo el reclutamiento y despido, compensación y beneficios y el cumplimiento de las reglamentaciones gubernamentales. Edward A. Lenz, <u>Co-employment—A Review of Customer</u>

---

[8] A este tipo de práctica se le conoce en Estados Unidos como, "employee leasing", "contract staffing", "contingent employment", entre otras denominaciones.

Liability Issues in the Staffing Services Industry, 10 Lab. Law. 195, 198 (1994); H. Lane Dennard, Jr. and Herbert R. Northrup, Leased Employment: Character, Numbers, and Labor Law Problems, 28 Ga. L. Rev. 683 (1994); Barbara McIntosh, Employee Leasing Issues: Employee Determination and Liability Considerations, 38 Lab. L. J. 11 (Jan. 1987).

En otras palabras, este tipo de práctica se refiere a un convenio en que una compañía cliente obtiene, como fuente de abasto de trabajadores mediante contratación, los servicios de unos empleados que están en la nómina de la compañía de servicios temporeros. John V. Jansonius, Use and Misuse of Employee Leasing, 36 Lab. L. J. 35 (Jan. 1985). Esta realidad trajo como consecuencia muchas interrogantes dentro del mundo laboral. Barbara McIntosh, Employee Leasing Issues: Employee Determination and Liability Considerations, ante; Jonathan G. Axelrod, Who's the Boss? Employee Leasing and the Joint Employer relationship, 3 Lab. Law. 853 (1987).

Entre las interrogantes que se han suscitado en cuanto a la relación patrono-empleado se encuentran: ¿Quién es el responsable de mantener esa relación y bajo qué condiciones? ¿Cuáles son los derechos y responsabilidades de cada una de las partes? ¿Quién es el verdadero patrono bajo las diferentes leyes protectoras laborales? ¿Quién asume las responsabilidades y riesgos en la relación de empleo? ¿Cuáles protecciones, derechos y

beneficios de ley les asisten a los empleados temporeros suministrados por una compañía de servicios temporeros? *Ibíd*.

Para atender esta situación, la Asamblea Legislativa de Puerto Rico aprobó la Ley Núm. 26, ante, con el propósito de establecer la política pública en cuanto la contratación de empleados por medio de compañías de servicios temporeros.[9] La Ley Núm. 26 dispone, en su exposición de motivos, lo siguiente:

> Durante los últimos años se ha ido generalizando en Puerto Rico la práctica del suministro de empleados temporeros por compañías de servicios temporeros.
>
> Esta modalidad de empleo plantea una serie de interrogantes. El Departamento del Trabajo y recursos Humanos ha interpretado que cuando un empleado temporero es destacado temporeramente en una compañía cliente por una compañía de servicios temporeros, tanto ésta como la compañía cliente se consideran patronos solidarios a los fines de la legislación protectora del trabajo. Se interpreta, sin embargo, que en tales circunstancias la responsabilidad primaria como patrono recae sobre la compañía cliente, que es la que se aprovecha directamente de los servicios del empleado.
>
> Esa interpretación tiene como resultado que cada empleado temporero acumula beneficios marginales (vacaciones, licencia por enfermedad,

---

[9] En otras jurisdicciones de los Estados Unidos también se ha legislado para regular estas Compañías de Servicios Temporeros. *Véase* Kan. Stat. Ann. sec. 44-758 (Kansas); Me. Rev. Stat. Ann. tit. 24, sec. 2385-E (Maine); Mo. Ann. Stat. sec. 287.282 (Missouri); 1993 Tex. Gen. Laws 994 (Texas); Fla. Stat. Ann. sec. 468.525 (Florida); Utah Code Ann. sec. 58-59-102 (Utah); Tenn. Code Ann. sec. 62-31-102 (Tennesse); Or. Rev. Stat. sec. 656.017 (Oregon); Nev. Rev. Stat. sec. 616.254 (Nevada); N.M. Stat. Ann. sec. 59A—2-9 (New Mexico); S.C. Code Ann. sec. 40-68-10 (South Carolina).

etc.), según el decreto mandatorio aplicable a la compañía cliente. Dadas las peculiaridades de esta atípica situación, la interpretación acuñada resulta un tanto perjudicial a los intereses del empleado, ya que éste difícilmente acumula suficiente horas de trabajo en determinada compañía o empresa para poder disfrutar de los beneficios provistos por el decreto aplicable a ésta. La realidad fáctica es que la gran mayoría de los empleados suplidos por compañías de servicios temporeros no trabajan más de dos o tres semanas en cada compañía cliente.

A los fines de conjurar la situación antes apuntada, esta Asamblea Legislativa estima conveniente promulgar la presente ley para reglamentar el suministro de empleados temporeros por las compañías de servicios temporeros.

La Asamblea Legislativa al promulgar esta ley tuvo la intención de reglamentar el suministro de empleados por compañías de servicios temporeros, al establecer disposiciones específicas para: definir términos; establecer propósitos; y disponer las responsabilidades de la compañía de servicios temporeros y la compañía cliente con el propósito de brindarle más protección a estos empleados. Informe de la Comisión del Trabajo, Asuntos del Veterano y Recursos Humanos del Senado, P. Del S. 1006, 24 de mayo de 1991. A tenor con esta finalidad, la Ley Núm. 26 en su Artículo 1, 29 L.P.R.A. sec. 575, estableció las siguientes definiciones:

A los fines de este capítulo, los siguientes términos tendrán el significado que a continuación se expresa:

(a) Compañía de servicios temporeros-Significa toda persona u organización que se dedique a suplir empleados para que presten servicios a una compañía cliente.

(b) Compañía cliente- Significa toda persona u organización que solicite los servicios de empleados temporeros a compañías de servicios temporeros.

(c) Empleado temporero- Significa todo empleado que preste servicios para determinada persona u organización durante un lapso de tiempo cierto o para una obra cierta y que sea suministrada por una compañía de servicios temporeros.

(d) Decreto Mandatorio- Se refiere a los documentos de naturaleza casi legislativa emitidos por la Junta de Salario Mínimo de Puerto Rico fijando salarios mínimos, vacaciones, licencia por enfermedad, y otras condiciones de labor para determinada industria o actividad económica.

(e) Patronos Solidarios- Se refiere a aquella condición de responsabilidad legal impuesta simultáneamente por este capítulo tanto a la compañía de servicios temporeros como a la compañía cliente, mediante la cual ambas compañías se consideran igualmente responsables de las condiciones y derechos establecidos en virtud de la Ley de junio 26, 1956, Núm. 96 y las 271 *et seq.* de este título, como si se tratara de un solo patrono.

Como podemos notar, de las definiciones de la Ley Núm. 26 surge que la compañía de servicios temporeros es aquella que suple a una compañía cliente empleados para que presten servicios por un tiempo definido. De la referida disposición estatutaria surge, además, que la Asamblea Legislativa estableció unas definiciones amplias para cubrir a todo tipo de compañía que de alguna manera u otra se dedique a suplir empleados temporeros a otras compañías.

Asimismo, para establecer las responsabilidades de la compañía de servicios temporeros y la compañía cliente en

cuanto a las leyes protectoras del trabajo, el Artículo 3

de la Ley Núm. 26, 29 L.P.R.A. sec. 575b, dispone:

>       Al empleado temporero suplido por una compañía de servicios temporeros le aplicará el decreto mandatorio que cubre a las compañías de empleos temporeros en cuanto a vacaciones y licencia por enfermedad. Disponiéndose, que en cuanto a las demás condiciones de trabajo establecidas por decreto, le aplicará el decreto mandatorio de la compañía cliente.
>
>       No obstante, a los fines de las reclamaciones que tenga el empleado temporero bajo las disposiciones de la Ley de Junio 26, 1956, Núm. 96[10] y las secs. 271 *et seq.*[11] de este título, tanto la compañía de servicios temporeros como la compañía cliente se considerarán patronos solidarios, según este término es definido en el inciso (e) de la sec. 575 de este título.
>
>       Disponiéndose, que en cuanto a la legislación que prohíbe el discrimen en el empleo y el hostigamiento sexual[12], así como la que regula el despido injustificado[13], responderá de su cumplimento el que discrimine o despide al empleado o incurra en el acto sancionado por la ley, ya sea la compañía de servicios temporeros o la compañía cliente.

---

[10] Esta era la Ley de Salario Mínimo, 29 L.P.R.A. sec. 211 *et seq.*, que estaba vigente al momento de aprobarse esta Ley. Sin embargo, años después fue derogada por la Ley Núm. 180 de 27 de julio de 1998, conocida como Ley de Salario Mínimo, Vacaciones y Licencia por Enfermedad, 29 L.P.R.A. 250 *et seq.*

[11] Ley Núm. 379 de 15 de mayo de 1948, según enmendada, conocida como Ley de Horas y Días de Trabajo.

[12] Ley Núm. 17 de 22 de abril de 1988, mejor conocida como Ley de Hostigamiento Sexual en el Empleo, 29 L.P.R.A. sec. 155 *et seq.*

[13] Ley Núm. 80 de 30 de mayo de 1976, según enmendada, mejor conocida como Ley de Despido Injustificado, 29 L.P.R.A. sec. 185(a) *et seq.*

> Respecto a la legislación que obliga al patrono a reservar el empleo[14] del empleado durante la vigencia del contrato cuando se trate de empleados temporeros suministrados por compañías de servicios temporeros, la obligación de reservar el empleo que exigen estas leyes y según sus requisitos recaerá en la compañía de servicios temporeros o en caso de incumplimiento de ésta, en la compañía cliente en donde el empleado prestaba sus servicios al momento de acogerse a dicha licencia...(énfasis suplido.)

De la referida disposición estatutaria surge que las responsabilidades bajo las leyes protectoras del trabajo tanto de la compañía de servicios temporeros como de la compañía cliente varían dependiendo del estatuto laboral de que se trate.[15]

Así pues, cuando se trata de reclamaciones de salarios y beneficios al amparo de la Ley de Salario

---

[14] Ley Núm. 45 de 18 de abril de 1935, según enmendada, mejor conocida como Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 1 *et seq.*; Ley Núm. 139 de 26 junio de 1968, según enmendada, mejor conocida como Ley de Beneficio por Incapacidad Personal, 11 L.P.R.A. sec. 201 *et seq.*; Ley Núm. 3 de 13 de marzo de 1942, según enmendada, mejor conocida como Ley de Protección de Madres Obreras, 29 L.P.R.A. sec. 467 *et seq.*

[15] Los empleados pueden utilizar el procedimiento sumario bajo la Ley Núm. 2 para vindicar sus derechos bajo la Ley Núm. 26. Conforme a ello, en su Artículo 5, 29 L.P.R.A. sec. 575d, dispone:

> ...(b) Civiles-Cualquier persona u organización que viole las disposiciones de este capítulo responderá, además, de acuerdo a la legislación aplicable. También responderá de las costas, gastos e intereses y honorarios de abogado incurrido en el procedimiento. A estos fines podrá utilizarse el mecanismo de la acción civil ordinaria o el procedimiento sumario de reclamación de salarios provistos en las secs. 3118 a 3132 del Título 32.

Mínimo y la Ley de Horas y Días de Trabajo, la Ley Núm. 26 le impone responsabilidad solidaria a ambos patronos. Por lo tanto, esta obligación va a ser compartida por la compañía de servicios temporeros y por la compañía cliente. Ello quiere decir que, el empleado podrá reclamar la totalidad de los salarios y beneficios a los que tiene derecho bajo estas disposiciones estatutarias tanto a la compañía de servicios temporeros como a la compañía cliente, o en la alternativa a ambos.

En cuanto a la responsabilidad por discrimen en el empleo y hostigamiento sexual vemos que esta disposición impone una responsabilidad individual a cada patrono por sus actos. Esto es, sólo será responsable el patrono que realmente lleve a cabo el acto discriminatorio o de hostigamiento sexual. Dado el propósito de la Ley 26 de ampliar la protección de estos empleados temporeros, debemos interpretar que cuando se refiere a "la legislación que prohíbe el discrimen en el empleo" incluye a todas las disposiciones estatutarias de índole laboral que regulan cualquier tipo de discrimen en el trabajo.

Por otro lado, y de especial relevancia al caso de hoy ante nuestra consideración, la Ley Núm. 26 dispone, en cuanto a "la legislación que obliga a los patronos a reservar el empleo", que la responsabilidad recaerá en la compañía de servicios temporeros, pero "en caso de incumplimiento de ésta" será responsable la compañía cliente donde el empleado prestaba sus servicios. De la

referida disposición estatutaria claramente se puede concluir que la responsabilidad principal o primaria es de la compañía de servicios temporeros, mientras que la de la compañía cliente es de naturaleza subsidiaria.[16] En otras palabras, el que está obligado principalmente a reservarle el puesto al empleado temporero es la compañía de servicios temporeros; para que se pueda responsabilizar a la compañía cliente hay que establecer que ha habido incumplimiento por parte de la compañía de servicios temporeros.

En resumen, se puede decir que la Ley Núm. 26 le impone a los patronos, en este caso las compañías de servicios temporeros y las compañía cliente, distintas responsabilidades en cuanto a los empleados dependiendo del estatuto laboral del que se trate. En específico, dispone que en las reclamaciones de salarios la compañía de servicios temporeros y la compañía cliente se considerarán patronos solidarios. En cuanto a las reclamaciones por discrimen y hostigamiento sexual, la responsabilidad será del patrono que incurra en el acto discriminatorio. Por último, que en los caso en que el patrono está obligado a reservar el empleo, la obligación principal es de la compañía de servicios temporeros y la de la compañía cliente es de naturaleza subsidiaria.

---

[16] Una obligación subsidiaria es aquélla en la cual no hay que cumplirse sino en caso de incumplimiento de otra obligación. Véase Manuel Albaladejo, Derecho Civil Español, Tomo II p. 593 (1984).

III

Entendemos procedente discutir, en primer lugar, el segundo señalamiento de error del peticionario. Conforme a ello y en lo aquí pertinente, debemos determinar si el tribunal de instancia abusó de su discreción y actuó contrario a derecho al dictar la sentencia en rebeldía en contra del peticionario. Veamos.

El peticionario en este caso --no obstante tener el término de diez (10) días para contestar la querella, conforme las disposiciones de la Ley 2-- contestó la misma treinta y siete (37) días después de que fuera emplazado.[17] El peticionario pretendió justificar su tardanza, alegando como única excusa, que no se había presentado la contestación a la querella debido a que la gerencia de Dupont Agricultural descansó en la creencia de que debido a la relación contractual que tenían con Kelly Services, esta última proveería representación legal a ambas

---

[17] Resulta importante señalar que si el recurrido en este caso hubiese instado su acción bajo un procedimiento civil ordinario, la contestación del peticionario hubiese sido igualmente considerada como que fue presentada tardíamente. La Regla 10.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone:

    Un demandado deberá notificar su contestación dentro de (20) días de habérsele entregado copia del emplazamiento y de la demanda...

compañías.[18] <u>Esta excusa que presenta el peticionario es a todas luces insostenible</u>.

El peticionario en este caso <u>no</u> ha demostrado, <u>ni</u> del expediente del caso surge, que existan circunstancias especiales que nos permitan ser flexibles en la aplicación de las disposiciones de la Ley 2 y que nos permita soslayar la rapidez que debe regir en todo trámite judicial bajo la misma. Por lo tanto, <u>no erró el tribunal de instancia al anotarle la rebeldía</u>.

No obstante lo anterior, el hecho de que el peticionario hubiese contestado tardíamente la querella y procediera la anotación de la rebeldía, <u>no quiere decir que el tribunal de instancia podía en este caso automáticamente dictar sentencia a favor del recurrido si, conforme a derecho, ello no procedía</u>. Esto es, aunque reconocemos que conforme a la Sec. 4 de la Ley Núm. 2, ante, si un querellado no presenta su contestación dentro de los términos dispuestos en ella, el juez deberá conceder el remedio solicitado por el querellante, <u>esto no quiere decir, que el tribunal está obligado a dictar sentencia a favor del querellante si de las alegaciones de la querella no surge claramente una causa de acción que justifique la concesión de un remedio</u>. Recordemos que un

---

[18] De ninguna parte del expediente surge que durante los incidentes procesales del caso, Kelly Services haya tenido la intención de representar a Dupont Agricultural.

trámite en rebeldía no garantiza *per se* una sentencia favorable al querellante.

Como mencionáramos anteriormente, la consecuencia jurídica de la anotación en rebeldía es que se admitan como ciertas todas y cada uno de los hechos correctamente alegados. Supermercado Grande, Inc. v. Alamo Pérez, ante; Colón v. Ramos, ante. Por lo tanto, tenemos que examinar las alegaciones de la querella para poder determinar si de estas surge una causa de acción a favor del recurrido y que procede, entonces, dictar sentencia en rebeldía en contra del demandado.

De las alegaciones de la querella surge que el el Sr. Ocasio tenía un contrato de trabajo sin término fijo con Kelly Services, Inc. y que fue asignado a trabajar como operador en una fábrica de Dupont Agricultural; que luego de sufrir un accidente y ser referido al Fondo del Seguro del Estado, fue dado de alta y al reportarse a trabajar a Dupont Agricultural, no fue repuesto en su empleo.[19]

Conforme a la querella, el Sr. Ocasio alegó que Kelly Services y el peticionario lo despidieron ilegalmente violando el Artículo 5A de la Ley de Compensaciones por Accidentes del Trabajo, ante, y el Artículo 2 de la Ley de Represalias, ante. De esta manera, solicitó el querellante

---

[19] En la querella el recurrido alega que fue dado de alta el 30 de marzo de 2000. Sin embargo, no especifica la fecha exacta en que le solicitó a Dupont Agricultural que lo repusiera en su puesto. Tampoco de la querella surge si el recurrido le solicitó a Kelly Services que lo repusiera en su puesto.

que se dictara sentencia en contra del peticionario y Kelly Services y los condenara de forma solidaria al pago de las sumas solicitadas en la querella.

Ante este cuadro fáctico, debemos examinar si de las alegaciones antes expuestas y a tenor con la Ley Núm. 26, conocida como Ley de Compañías de Servicios Temporeros, ante, procede dictar sentencia en rebeldía en contra de Dupont Agricultural bajo las disposiciones de la Ley de Compensaciones por Accidentes del Trabajo, ante, y la Ley de Represalias, ante.

A tenor con el Artículo 5A de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 7, y de nuestro ordenamiento jurídico vigente, el patrono está obligado a reservarle el empleo a su obrero mientras éste recibe los beneficios del Fondo del Seguro del Estado, sujeto a los términos allí establecidos.[20]

---

[20] El Artículo 5A de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 1, dispone lo siguiente:

En los casos de inhabilitación para el trabajo de acuerdo con las disposiciones de este capítulo, el patrono vendrá obligado a reservar el empleo que desempeñaba el obrero o empleado al momento de ocurrir el accidente y a reinstalarlo en el mismo, sujeto a las siguientes condiciones:

(1) Que el obrero o empleado requiera al patrono para que lo reponga en su empleo dentro del término de quince días, contados a partir de la fecha en que el obrero o empleado fuere dado de alta, y siempre y cuando que dicho requerimiento no se haga después de transcurridos doce meses desde la fecha del accidente;

(Continúa . . .)

García Díaz v. Darex Puerto Rico, Inc., 148 D.P.R. 364
(1999). Como regla general, el patrono no puede despedir
al empleado en tales circunstancias, excepto que medie
justa causa. *Ibíd*. La obligación del patrono de reinstalar
al obrero, una vez es dado de alta del Fondo, está
supeditada a las tres condiciones que señala el Artículo
5A, ante.

Por otro lado, el Tribunal de Apelaciones determinó
que bajo la Ley Núm. 26, ante, la responsabilidad de la
compañía de servicios temporeros y la compañía cliente en
cuanto "a la legislación que obliga al patrono a reservar
el empleo" es solidaria y por lo tanto ambos le responden

─────────────────────

(2) que el obrero o empleado esté mental y
    físicamente capacitado para ocupar dicho
    empleo en el momento en que solicite del
    patrono su reposición, y

(3) que dicho empleo subsista en el momento en que
    el obrero o empleado solicite su reposición. (Se
    entenderá que el empleo subsiste cuando el mismo
    está vacante o lo ocupe otro obrero o empleado.
    Se presumirá que el empleo estaba vacante cuando
    el mismo fuere cubierto por otro obrero o
    empleado dentro de los treinta días siguientes
    de la fecha en que se hizo el requerimiento de
    reposición.)

Si el patrono no cumpliere con las disposiciones de
esta sección vendrá obligado a pagar al obrero o empleado
o a sus beneficiarios los salarios que dicho obrero o
empleado hubiere devengado de haber sido reinstalado,
además le responderá de todos los daños y perjuicios que
le haya ocasionado. El obrero o empleado, o sus
beneficiarios, podrán instar y tramitar la correspondiente
reclamación de reinstalación y/o de daños en corte por
acción ordinaria o mediante el procedimiento para
reclamación de salarios, establecidos en las secs. 3118 a
3132 del Título 32.

al empleado. Erró el Tribunal de Apelaciones al así resolver.

Señalamos, anteriormente, que la responsabilidad de la compañía de servicios temporeros y de la compañía cliente, bajo las disposiciones de la Ley 26, varía respecto al tipo de reclamación de índole laboral. En específico, señalamos que respecto "a la legislación que obliga al patrono a reservar el empleo", la responsabilidad de la compañía cliente es de naturaleza subsidiaria ya que el principal responsable es la compañía de servicios temporeros, y sólo en casos de un incumplimiento de ésta, es que el primero tendrá que responderle al empleado. La interpretación que hace el Tribunal de Apelaciones es contraria a las disposiciones y a la intención legislativa de la Ley Núm. 26.[21] Si se

---

[21] Mientras esta Ley estuvo bajo estudio en la Comisión del Trabajo de la Cámara de Representantes se rechazó imponerle responsabilidad solidaria a la compañía de servicios temporeros y a la compañía cliente respecto a las obligaciones que impone la Ley de Compensaciones por Accidentes del Trabajo. Conforme a ello se dijo lo siguiente:

Por otra parte, la figura del patrono solidario no se da en la Ley de Compensaciones por Accidentes del Trabajo. La relación obrero-patronal es el vínculo necesario para determinar si una persona queda comprendida como patrono o empleado, según sea el caso, dentro de las disposiciones de la Ley de Compensaciones por Accidentes del Trabajo.

Las complejidades técnicas y administrativas que habría que salvar para asegurar justa y equitativamente la responsabilidad patronal que una persona pudiera tener como patrono solidario

(Continúa . . .)

hubiese querido imponer responsabilidad solidaria bajo estos estatutos a la compañía de servicios temporeros y a la compañía cliente así lo hubiese dispuesto expresamente la Asamblea Legislativa.

Cónsono con lo anterior, concluimos que en este caso la responsabilidad principal de reservar el empleo al recurrido, conforme a las disposiciones de la Ley 45, ante, recae en la compañía de servicios temporeros, Kelly Services, y sólo en caso de incumplimiento de ésta es que se puede responsabilizar a Dupont Agricultural.

Por otro lado, la Ley Núm. 115, conocida como Ley de Represalias, es un estatuto que se creó para proteger a los empleados contra las represalias que puedan tomar los patronos en contra de estos, por ofrecer algún tipo de testimonio, expresión o información ya sea verbal o escrita ante un foro legislativo, administrativo o judicial en Puerto Rico. 29 L.P.R.A. sec. 194a.[22] En

---

bajo el vigente esquema de derecho del seguro de compensaciones por accidentes del trabajo, no justifican un cambio de la forma actual de asegurar dicha responsabilidad patronal. Bajo la Ley de Compensaciones por Accidentes en el Trabajo es a la compañía o agencia de servicios temporeros a la que se impone responsabilidad de asegurar a los empleados temporeros. Memorial Legislativo del P. De la C. 1234.

[22] El Art. 2 de la Ley Núm. 115 dispone:

(a) Ningún patrono podrá despedir, amenazar o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del

(Continúa . . .)

específico, el propósito de este estatuto fue proteger a los empleados que fueran discriminados por medio de represalias por participar en alguna de las actividades protegidas mencionadas anteriormente. Véase Hernández v. Espinosa, ante; Marín v. Fastening Systems, Inc., ante.

Para tener una causa de acción bajo la referida disposición estatutaria el empleado tendrá que probar lo siguiente: (1) que participó en una de las actividades protegidas por la ley; (2) y que subsiguientemente fue despedido, amenazado o sufrió discrimen en el empleo. 29 L.P.R.A. sec. 194a(c); Marín v. Fastening Systems, Inc., ante.[23] En el presente caso, no existe prueba sobre ello.

Anteriormente señalamos que bajo la Ley Núm. 26, la responsabilidad "en cuanto a la legislación que prohíbe el discrimen en el empleo" es del patrono que "incurra en el acto sancionado por la ley". Como ya señaláramos, esta disposición incluye todas las leyes que sancionan el discrimen en el empleo. Conforme a ello, resolvemos que

---

empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley...

[23] En el caso Irizarry v. J & J Cons. Prods. Co., Inc., 150 D.P.R. 155 (2000), reconocimos que cuando un empleado acude al Fondo del Seguro del Estado conforme a las disposiciones de la Ley Núm. 45, ante, se considera como una "actividad protegida" por la Ley Núm. 115, ante.

bajo la Ley Núm. 26, el responsable por violar las disposiciones de la Ley Núm. 115 será la que incurra en el acto sancionado por la ley, ya sea la compañía de servicios temporeros o la compañía cliente, o ya sean ambas.

A la luz de lo antes expuesto, concluimos que el Tribunal de Primera Instancia actuó contrario a derecho al dictar sentencia en rebeldía en contra del peticionario, ya que de las alegaciones no surge que conforme a la Ley Núm. 26, ante, el Sr. Ocasio pueda tener una causa de acción bajo el Artículo 5A de la Ley 45, ante, y el Artículo 2 de la Ley Núm 115, ante, contra éste.

En cuanto a la Ley 45, de las alegaciones de la querella tampoco surge que el Sr. Ocasio tenga una causa de acción al amparo de este estatuto. En primer lugar de la querella no surge: la fecha exacta en que el Sr. Ocasio se reportó a su trabajo en Dupont Agricultural; si éste estaba mental y físicamente capacitado para volver al empleo; ni tampoco si el puesto que él tenía subsistía al momento en que solicitó la reposición.

En segundo lugar, y de particular relevancia, de las alegaciones de la querella no surge que la compañía de servicios temporeros, quién tiene la responsabilidad principal de reservar el empleo, incumplió con su obligación. Para poder imputarle responsabilidad a Dupont Agricultural había que determinar, en primer lugar, si Kelly Services Inc., la compañía de servicios temporeros,

había incumplido con su obligación de reservarle el empleo al recurrido, ya que la responsabilidad del primero es de naturaleza subsidiaria.

De la misma manera, de las alegaciones de la querella no surgen hechos que nos permitan concluir que procedía imponerle responsabilidad a Dupont Agricultural por las reclamaciones al amparo de la Ley Núm. 115. En específico, el recurrido con sus alegaciones no nos pone en posición de saber quién cometió el acto discriminatorio, si la compañía de servicios temporeros, Kelly Services Inc., o la compañía cliente, Dupont Agricultural. El recurrido no menciona hechos específicos que, dándolos como ciertos, nos permita responsabilizar al peticionario por violaciones a la Ley 115, por haber tomado represalias en contra del empleado.

Al considerar estas alegaciones de forma integral, en conjunto con la súplica, y de la forma más favorable al querellante, concluimos que las mismas no son suficientes para promover una sentencia en rebeldía sin celebración de vista. Se trata de conclusiones generales que no están apoyadas por hechos específicos. Por tal razón, a pesar de que el peticionario no contestó a tiempo la querella, ni pudo justificar su tardanza, y por lo tanto, procede la anotación de la rebeldía en su contra, el Sr. Ocasio tiene que probar sus alegaciones bajo la Ley Núm. 45 y la Ley Núm. 115 ante el tribunal de instancia, tomando en cuenta las disposiciones de la Ley de Compañías de Servicios

Temporeros. El tribunal de instancia debe celebrar una vista para pormenorizar los hechos que fundamenten la causa de acción del querellante y los alegados daños, y de así proceder, dictar sentencia a favor de la parte querellante.[24]


                              IV

En cuanto al primer señalamiento de error el peticionario sostiene que el Tribunal de Instancia y el Tribunal de Apelaciones erraron al no permitir que este caso fuera tramitado por el procedimiento civil ordinario. No le asiste razón.

Como ya señaláramos, para que los tribunales de instancia puedan atender una solicitud para que la querella sea tramitada por la vía ordinaria, ésta tiene que ser presentada oportunamente. Véase: Berríos Heredia v. González, ante. El peticionario no presentó su solicitud oportunamente ya que contestó la querella --sin tan siquiera haber solicitado prórroga-- treinta y siete (37) días después de haber sido emplazado y procedía que se le anotara la rebeldía. Conforme a las disposiciones mandatorias de la antes citada Ley Núm. 2, el tribunal de instancia no tenía discreción para conceder la solicitud del peticionario.

---

[24] El Tribunal de Instancia deberá tomar en cuanta que el co-querellado Kelly Services Inc. no se encuentra en rebeldía.

V

Por los fundamentos antes expuestos, procede <u>revocar</u> la sentencia emitida en el presente caso por el Tribunal de Apelaciones y devolver el caso al Tribunal de Primera Instancia para ulteriores procedimientos conforme a lo aquí resuelto.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Uzziel Ocasio Méndez

    Recurrido

        vs.                  CC-2003-122     CERTIORARI

Kelly Services Inc.; Dupont
Agricultural Corp.

    Peticionario


SENTENCIA

En San Juan, Puerto Rico, a 20 de enero de 2005


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia revocatoria de la emitida en el presente caso por el Tribunal de Apelaciones y se devuelve el mismo al Tribunal de Primera Instancia, Subsección de Distrito, Sala de Camuy, para ulteriores procedimientos conforme a lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez concurre en el resultado sin opinión escrita. El Juez Asociado señor Fuster Berlingeri disiente sin opinión escrita.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo