ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| LUIS M. SUÁREZ ANDINO<br><br>Recurrido<br><br>v.<br><br>CHARLEY AUTO IMPORT, INC.<br><br>Recurrente | KLRA202500187 | *REVISIÓN ADMINISTRATIVA* procedente del Departamento de Asuntos del Consumidor<br><br>Caso Núm.:<br>CAG-2024-0005764<br><br>SOBRE:<br>Compra Venta de Vehículo de Motor |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero, el Juez Campos Pérez y el Juez Sánchez Báez

Sánchez Báez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 8 de julio de 2025.

Compareció el recurrente, Charley Auto Import, Inc. (en adelante, "Charley Auto" o "recurrente"), mediante el *Recurso de Revisión* presentado el 28 de marzo de 2025. Nos solicitó la revocación de la determinación emitida por el Departamento de Asuntos del Consumidor (en adelante, "DACo") el 28 de febrero de 2025. Mediante este dictamen, el DACo declaró ha lugar la *Querella* presentada por el señor Luis M. Suárez Andino (en adelante, "señor Suárez Andino" o "recurrido"), dando así por resuelto el contrato de compraventa de vehículo de motor usado entre ellos y ordenando a Charley Auto a pagarle al señor Suárez Andino la cantidad correspondiente a la cancelación del contrato de financiamiento del vehículo, cuantía que devengaría el interés legal prevaleciente.

Por los fundamentos que expondremos a continuación, se **confirma** la determinación de la agencia administrativa.

---

[1] Mediante la Orden Administrativa DJ 2024-062C emitida el 6 de mayo de 2025, se enmendó la constitución de los paneles del Tribunal de Apelaciones.

Número Identificador

SEN2025 _____

**-I-**

El 13 de octubre de 2023, Charley Auto le vendió un vehículo marca Kia Río del 2020 al señor Suárez Andino. Debido a unos desperfectos reportados por el recurrido, el 13 de noviembre de 2023, Charley Auto recogió la unidad. Luego de verificar el automóvil y arreglar el desperfecto, se le notificó al señor Suárez Andino que podía recolectar su carro.

El 14 de febrero de 2024, el señor Suárez Andino presentó ante el DACo una *Querella* contra Charley Auto.[2] El señor Suárez Andino adujo que un mecánico de la recurrente le expresó que el auto se encontraba en el *dealer* porque había sido arreglado. Empero, especificó que el gerente de Charley Auto le indicó lo contrario. Es decir, que la unidad aún seguía en el taller. El señor Suárez Andino solicitó la cancelación total del préstamo de financiamiento debido a que no le habían entregado el vehículo y no había podido disfrutarlo.

En respuesta a esto, Charley Auto presentó una *Moción Asumiendo Representación Legal y Solicitando Prórroga para Expresarnos* el 13 de marzo de 2024; esta moción fue declarada ha lugar.[3] En consecuencia, el 6 de abril de 2024, Charley Auto presentó su *Contestación a [la] Querella.*[4] Alegó que el vehículo ya estaba listo para que fuese recogido por el señor Suárez Andino, y que este fue notificado sobre ello. Además, subrayó que la querella era poco específica, estaba prescrita, que el recurrido renunció a la inspección mecánica de la unidad y que este estaba satisfecho luego de revisarlo personalmente, entre otras defensas afirmativas.

El 23 de octubre de 2024, se llevó a cabo una inspección del vehículo en las facilidades de Charley Auto. La representación legal

---

[2] Apéndice de la recurrente, anejo 1, págs. 1-5.
[3] *Íd.*, anejo 2, págs. 6-8.
[4] *Íd.*, anejo 3, págs. 9-10.

de este último estuvo presente durante ese examen. Tras la inspección, el DACo citó a las partes a una vista administrativa el 4 de noviembre de 2024; esto les fue remitido por correo el 8 de noviembre de 2024.[5]

Luego de celebrada la visa administrativa, el DACo emitió una *Resolución* final el 3 de febrero de 2025.[6] En esta, el ente administrativo indicó que Charley Auto no compareció a la vista celebrada el 13 de diciembre de 2024 y que las notificaciones emitidas por el foro no fueron devueltas por el servicio postal, por lo cual se presumieron como recibidas. Debido a ello, se procedió a anotar su rebeldía en el caso de acuerdo con la Sección 3.10 de la LPAU. Entonces, la agencia realizó una serie de determinaciones de hechos:

1. A finales del mes de octubre de 2023[,] el Querellante llamó [a] las facilidades de la Querellada, interesado en adquirir un Vehículo de motor. El Querellante fue atendido por una Vendedora de nombre Emy Quiñones [a] quien el Querellante le ofreció toda la información para la compra y financiamiento de un vehículo.

2. A principios de noviembre de 2023, [unos] empleados de la Querellada[,] entre las 6:30 a 7:00 PM[,] le llevaron el vehículo a la residencia del Querellante en el barrio Cayaguas, en el pueblo de San Lorenzo. Esa noche, el Querellante firmó el contrato de compraventa de un vehículo de motor usado marca Kia, Modelo Rio del año 2020 con tablilla KEO639. ([E]n lo sucesivo[,] el Vehículo).

3. Al otro día, cuando el Querellante fue a utilizar el Vehículo, y al encender el mismo[,] [e]ste **comenzó a hacer ruidos como contra explosiones y prendieron las luces del panel**. El Querellante llamó a las facilidades de la Querellada y[,] dos días después, **una grúa pasó por la residencia del Querellante, y recogió el Vehículo y se lo llevó a las facilidades de la Querellada**.

4. El Querellante realizó un contrato de préstamo con Baxter Credit Union para la compra del Vehículo por la cantidad de $20,499.00 los cargos por financiamiento ascendieron a la cantidad de $9,701.26 con una tasa de interés anual de un 12.765%. La cantidad total a pagar por el Querellado incluyendo los cargos de financiamiento sería la cantidad de $31,354.18. El pago mensual ascendía a la cantidad de $418.06 mensuales por 74 meses y un pago final de $417.74. El trámite para el préstamo con Baxter se realizó a través de la Querellada por teléfono. El consentimiento del Querellante también se hizo por teléfono.

---

[5] Este dato se obtuvo luego de que le ordenáramos al DACo que elevase el expediente del caso y realizáramos posteriormente el respectivo examen de este documento administrativo.
[6] Apéndice de la recurrente, anejo 5, págs. 15-25.

5. La **Querellada retuvo el Vehículo para reparación por varios meses**. A pesar de las múltiples gestiones para saber el estatus de la reparación del vehículo, la Querellada **no atendió el reclamo del Querellante, ni le informaba sobre el estatus de reparación del Vehículo**.

6. El 14 de febrero de 2024[,] el Querellante radicó ante este Departamento la Querella de epígrafe. En la misma, el Querellante alegó que realizó un contrato de compraventa de un Vehículo de motor con la Querellada. Al otro día de haber adquirido el Vehículo[,] cuando fue a utilizarlo[,] el Vehículo confrontó problemas mecánicos. **Que la Querellada recogió el Vehículo en su residencia y no se lo ha entregado. El Querellante solicitó como remedio la cancelación del contrato de préstamo**.

7. Como parte del proceso administrativo, el 23 de octubre de 2024, este Departamento citó a las partes para la realización de una inspección del Vehículo. El Técnico de Investigación asignado por este Departamento fue el Sr. José Torrón Martínez. ([E]n lo sucesivo[,] el Técnico).

8. El Informe de la Inspección conjunta fue notificado y archivado en autos el 25 de octubre de 2024.

9. De acuerdo con el Informe preparado por el Técnico[,] el resultado de [l]a inspección fue [el] siguiente:

[…]

*El vehículo estaba en poder del querellado. Pregunt[é] si poseía marbete y [me] dejaron saber que sí. Al tratar de prenderlo[,] mostr[ó] [una] batería electrónica de 12 voltios muerta por estar tanto tiempo detenido y "T.P.M.S. Tire Pressure Monitor System" prendido por [haber] un neumático fuera de su presión normal. El querellado le aplic[ó] corriente con una batería portable a la del vehículo y se lo llevaron para recompensar [el] aire de los neumáticos y repostar [el] combustible.*

*Al llegar de vuelta el vehículo[,] salimos para hacer una prueba de carretera la cual fue bien extensa. Estaba mostrando en el panel de instrumentación [la] luz de advertencias "Check Engine". Se recorri[eron] vías rápidas, urbanas y rurales con curvas y pendientes donde el tren propulsor mostr[ó] un buen desempeño tanto con las opciones de acondicionador de aires prendido y apagado. Este no mostr[ó] calentamiento de motor o ruidos anormales en su recorrido. También[,] se probó con las opciones normales y deportivas que posee el automóvil como selección en su plataforma en el tren propulsor. Estas opciones tampoco mostraron problemas y [se] desplaz[ó] bien. Al regresar al concesionario[,] solicit[é] una evaluación "O.B.D.II On Board Diagnostic" donde el querellado instal[ó] un "Pocket Scanner" y extrajo [un código de falla].*

[…]

*Opinión pericial: El defecto de electrónica "O.B.D.II" código C0300 es reparable.*

[…]

10. Ninguna de las partes objetó el Informe del Técnico de este Departamento. Por tal razón, su contenido quedó

estipulado, conforme a la Regla 15.3 del Reglamento de Procedimientos Adjudicativos de este Departamento.

11. El día de la inspección[,] los representantes de la **Querellada se comprometieron a reparar los desperfectos de la luz de Check Engine y el sensor en tres días y luego de comunicarían con el Querellante, y no lo hicieron**. **El Vehículo sigue en poder de la Querellada**.

12. El Querellante no ha realizado ningún pago a Baxter Credit Union.[7]

Mediante el referido dictamen, el DACo declaró ha lugar la *Querella* incoada por el señor Suárez Andino, determinó que el contrato de compraventa era nulo o que estaba resuelto, y condenó a Charley Auto a pagarle la cantidad de dinero que especifique la certificación que emitiría Baxter Credit Union (en adelante, "Baxter"), lo cual devengaría el interés legal prevaleciente desde la notificación de la *Resolución* hasta su entera satisfacción. Por otro lado, como el vehículo aún estaba en posesión de Charley Auto, nada se especificó sobre su devolución.

Inconforme, Charley Auto presentó una *Moción Solicitando Reconsideración* que fue recibida por el DACo el 21 de febrero de 2025.[8] Alegó que la incomparecencia suya a la vista celebrada el 13 de diciembre de 2024 se debió a que no recibieron la notificación de la audiencia y no estaba al tanto de la fecha o citación a esta. Reiteró que estaba a la disposición de cumplir con las órdenes del foro, como lo hizo durante el trayecto del trámite de la *Querella*. Argumentó que se debía reconsiderar el haberle anotado la rebeldía para darle la oportunidad de expresarse o tener su día en corte.

Por su parte, el DACo notificó su *Resolución en Reconsideración* el 28 de febrero de 2025.[9] Mediante esta, declaró no ha lugar a la reconsideración presentada por Charley Auto, sosteniendo así su dictamen original sobre la nulidad o resolución del contrato.

---

[7] *Íd.*, págs. 15-18. (Énfasis suplido).
[8] *Íd.*, anejo VI, págs. 26-28.
[9] *Íd.*, anejo VII, págs. 29-32.

Insatisfecho aun, Charley Auto instó su recurso de revisión administrativa ante esta curia el 28 de marzo de 2025. En este, apuntaló el siguiente error:

> Erró el Honorable DACO a través de su Juez Administrativo Lcdo. Samuel González González, ya que abusó de su discreción y sus actos constituyeron una violación crasa al debido proceso de ley del aquí compareciente, toda vez que celebró una Vista en sus méritos en el caso el 13 de diciembre de 2024, sin haber solicitado que se mostrara causa por la incomparecencia, sin utilizar medidas menos punitivas que el declarar al recurrente en rebeldía y celebrar la vista en su ausencia.

El 8 de abril de 2025, emitimos una *Resolución* en la cual establecimos un término perentorio de treinta (30) días para que el señor Suárez Andino presentara su oposición al recurso presentado. Al este no oponerse, procederemos a resolver sin el beneficio de su comparecencia.

Examinada la revisión administrativa de autos y la totalidad del expediente, procedemos a exponer la normativa jurídica aplicable a la controversia ante nuestra consideración.

**-II-**

**A. Revisión administrativa**

La Ley Núm. 38-2017, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico" (en adelante, "LPAU") dispone que las decisiones administrativas pueden ser revisadas por el Tribunal de Apelaciones. 3 LPRA sec. 9671. Como cuestión de derecho, la revisión judicial será sobre las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. *Íd.*, sec. 9676. El propósito de tal disposición consiste en delimitar la discreción de los foros administrativos para asegurar que estos ejerzan sus funciones razonablemente y conforme a la ley. *Hernández Feliciano v. Mun. Quebradillas,* 211 DPR 99, 113-114 (2023).

En nuestro ordenamiento jurídico, se ha reiterado que, los tribunales apelativos conceden gran consideración y deferencia a las

determinaciones de las agencias debido a su vasta experiencia y conocimiento especializado. *Íd.,* pág. 114. Más aun, cuando estas determinaciones son interpretaciones de las leyes que administra la agencia en cuestión. *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018).

En cuanto a las determinaciones de hechos formuladas por las agencias administrativas, la LPAU establece que serán sostenidas si están basadas en evidencia sustancial contenida en el expediente administrativo. 3 LPRA sec. 9675. Por consiguiente, existe una presunción de legalidad y corrección que reviste a las determinaciones de hechos elaboradas por las agencias administrativas, salvo que la parte que las impugna no produzca evidencia suficiente para derrotarlas. *Hernández Feliciano v. Mun. Quebradillas*, supra, pág. 114; *OEG v. Martínez Giraud*, 210 DPR 79, 88-89 (2022); *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581, 591 (2020); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 128 (2019). En otras palabras, la parte que cuestiona las determinaciones de hechos de una agencia tiene que demostrar que el dictamen administrativo no está justificado por una evaluación justa del peso de la prueba que tuvo ante su consideración. *Rebollo v. Yiyi Motors,* 161 DPR 69, 77 (2004).

Por otro lado, la LPAU sostiene que las conclusiones de derecho realizadas por los foros administrativos serán revisables en todos sus aspectos. 3 LPRA sec. 9675. Esto es, el tribunal revisor no tiene que otorgarle deferencia a las conclusiones o interpretaciones de derecho formuladas por las agencias administrativas. *Vázquez v. Consejo de Titulares et al.*, 2025 TSPR 56, pág. 28; 215 DPR ___. Sobre esto, el tribunal revisor deberá ejercer un juicio independiente para determinar si la actuación de la agencia administrativa está dentro del marco de sus facultades estatutarias. *Íd.* Por ello, los tribunales deben armonizar, siempre que sea posible, todos los

estatutos y reglamentos administrativos involucrados para una solución justa de la controversia, de modo que se obtenga un resultado sensato, lógico y razonable. *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 843 (2021).

Además, el tribunal revisor no dará deferencia a los procedimientos administrativos si al examinar el dictamen recurrido determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente, o (4) su actuación lesiona derechos constitucionales fundamentales. *Hernández Feliciano v. Mun. Quebradillas,* supra, pág. 114. Así pues, la revisión administrativa está limitada a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si esta actuó de forma arbitraria, caprichosa o ilegal. *Moreno Lorenzo y otros v. Depto. Fam.*, supra, 839 (2021).

En síntesis, la LPAU establece que el tribunal revisor se ceñirá a evaluar lo siguiente: (i) si el remedio concedido fue apropiado; (ii) si las determinaciones de hecho están sostenidas por evidencia sustancial que obre en el expediente administrativo, y (iii) si se sostienen las conclusiones de derecho realizadas por la agencia. 3 LPRA sec. 9675.

**B. Procedimientos adjudicativos ante el DACo**

La Ley Orgánica del Departamento de Asuntos del Consumidor, Ley Núm. 5 de 23 de abril de 1973, 3 LPRA sec. 341, le permite a este ente administrativo "adjudicar las querellas que se traigan ante su consideración y conceder los remedios pertinentes conforme a derecho". 3 LPRA sec. 341e(d); *Ortiz Rolón v. Armando Soler Auto Sales, Inc. et al.,* 202 DPR 689, 696 (2019); *Amieiro González v. Pinnacle Real Estate Home Team*, 173 DPR 363, 372 (2008). Por esto, el DACo debe cerciorarse de que se cumplan con

todas las leyes vinculadas a los derechos de los consumidores. 3 LPRA sec. 341e (d).

El Artículo 6 de la Ley Núm. 5, *supra*, instaura los poderes delegados al DACo, algunos de los cuales son:

> (c) Atender, investigar y resolver las quejas y querellas presentadas por los consumidores de bienes y servicios adquiridos o recibidos del sector privado de la economía. Cuando declare con lugar una querella, el Secretario ordenará al querellado perdidoso que haya procedido con temeridad que pague total o parcialmente los gastos incurridos por el Departamento en su tramitación. El Secretario dispondrá por reglamento los cargos por concepto de gastos que deberá pagar el querellado perdidoso.
>
> (d) Poner en vigor, implementar y vindicar los derechos de los consumidores, tal como están contenidos en todas las leyes vigentes, a través de una estructura de adjudicación administrativa con plenos poderes para adjudicar las querellas que se traigan ante su consideración y conceder los remedios aptos conforme a derecho, disponiéndose que las facultades conferidas en este inciso podrá delegarlas el Secretario en aquel funcionario que él entienda cualificado para ejercer dichas funciones.

*Íd.*, sec. 341e.

Asimismo, el DACo deberá "establecer las reglas y normas necesarias para la conducción de los procedimientos administrativos, tanto de reglamentación como de adjudicación, que celebre el Departamento". *Íd.*

Para integrar las disposiciones de la ley reseñada, el DACo aprobó el Reglamento de Procedimientos Adjudicativos, Reglamento Núm. 8034 de 13 de junio de 2011 (en adelante, "Reglamento Núm. 8034"). Este promueve la solución justa, rápida y económica de las querellas presentadas ante la agencia y se propone uniformar su procedimiento. *Íd.*, R. 1, pág. 1. Este reglamento incide sobre "las investigaciones y los procedimientos administrativos sobre querellas iniciadas por consumidores, o por el Departamento". *Íd.*, R. 3. Además, el Reglamento Núm. 8034, *supra*, aplica a los procesos adjudicativos del DACo, salvo si alguna ley dispone términos distintos, los cuales la agencia respetará. *Íd.*

La Regla 4(f) define a un consumidor como ""[t]oda persona natural, que adquiere o utiliza productos o servicios como

destinatario final". *Íd.,* R. 4(f), pág. 3. Esto armoniza con la Regla 4(u), la cual conceptualiza al querellante como el ""[c]onsumidor o representante autorizado que reclama un derecho o servicio en su capacidad personal". *Íd.,* R. 4(u), pág. 5. Es decir, un consumidor perjudicado puede presentar una querella ante el DACo.

A su vez, la Regla 4(t) precisa que una querella es una:

> Reclamación presentada por un consumidor o su representante autorizado solicitando que le sea reconocido un derecho y concedido un remedio. En adición, es una acción iniciada por el Departamento, para hacer cumplir las leyes y reglamentos, e imponer multas o sanciones.

*Íd.*, R. 4(t), pág. 3.

El proceso de instar una reclamación con el DACo está expuesto en la Regla 5.1 del Reglamento Núm. 8034, *supra*: "[t]oda querella se inicia y consulta del querellante o del personal del Departamento, donde se expresan los hechos que motivan la reclamación. El Departamento asesorará al querellante sobre los documentos necesarios para radicar la querella". *Íd.,* R. 5.1, pág. 6.

Luego de que el consumidor presenta su querella, la Regla 8 del citado reglamento dictamina que el DACo *tiene* que cursarle la debida notificación al querellado:

> El Departamento notificará a todos los querellados la querella radicada en su contra. Esta notificación será un aviso escrito de que el querellado deberá contestar la querella en el término de veinte (20) días a partir de la notificación, advirtiendo además que de **no recibirse la contestación a la querella en dicho término se le anotará rebeldía**. La notificación consistirá en copia del a querella y un aviso escrito de:
>
> **a) Cualquier vista que señale el Departamento las partes podrán comparecer con abogado, intérprete, transcriptor de récord y deberán comparecer todas las personas citadas bajo el apercibimiento de la imposición de sanciones en caso de incomparecencia injustificada.**
>
> **b) Una invitación para relacionarse con el expediente.**
>
> **c) Cuando de la relación de hechos contenida en la querella se desprenda una violación a los reglamentos y leyes que administra el Departamento, se podrá referir a la División de Protección para investigación y la acción correspondiente.**

*Íd.*, R. 8.1, pág. 9. (Énfasis suplido).

La notificación de la querella debe cumplir con ciertas formalidades, a saber:

La notificación de la querella, por correo ordinario, o cualquier otro medio cuando las partes así lo soliciten por escrito y existan los recursos en el Departamento para llevarlo a cabo, o se llevarán a cabo personalmente cuando las circunstancias así lo ameriten.

En caso de notificación personal, el diligenciante certificará su entrega, haciendo constar la fecha, hora y dirección física exacta de la entrega, e identificará por nombre la persona a quien la entregó. Se podrá diligenciar una notificación en las personas que pueden emplazadas conforma a las Reglas de Procedimiento Civil de Puerto Rico de 2009, según enmendadas.

Cuando se solicite la notificación de la querella o cualquier otro documento mediante correo electrónico o tele-copiador (fax), se renuncia a la notificación mediante correo ordinario. La fecha y hora, en la confirmación en la confirmación de envío al tele-copiador (fax) receptor solicitado, será la evidencia de haberse notificado los documentos. Sin embargo, el Departamento podrá notificar un documento por correo ordinario cuando existan problemas técnicos de transmisión o los documentos a enviarse sean extensos.

*Íd.*, R. 8.2-8.4, págs. 9-10.

Luego de que se notifica conforme a derecho, el DACo procederá a celebrar una vista administrativa. En esta audiencia, se podrá presentar prueba.

La Regla 20.2 del Reglamento Núm. 8034, *supra*, establece que las vistas administrativas que se lleven a cabo en la agencia también deben ser debidamente notificadas:

El Departamento fijará la fecha y la notificará por escrito a las partes que será no antes de quince (15) días de dicha notificación a menos que las partes pacten otra fecha, con la anuencia del Juez u Oficial Administrativo, Secretario o Panel de Jueces que presida los procedimientos. Se le apercibirá al querellante que si no comparece podrá ordenar la desestimación y archivo de la querella por abandono. **Si el querellado no comparece[,] se podrán eliminar sus alegaciones**. El Departamento podrá también condenar al pago de honorarios de abogado o dictar cualquier otra orden que en Derecho proceda.

*Íd.*, R. 20.2, pág. 23. (Énfasis suplido).

Luego de que se celebre la mencionada audiencia, el Juez Administrativo está facultado para emitir una resolución que abarque lo próximo:

La resolución de la querella en sus méritos contendrá una relación de la determinación de hechos probados, la cual se

ajustará y tendrá apoyo en el expediente del procedimiento, conclusiones de derecho, y dispondrá lo que en Derecho proceda para su ejecución mediante una orden e incluirá los apercibimientos para solicitar revisión judicial.

*Íd.*, R. 26.1, pág. 28.

La decisión del DACo debe estar fundamentada en prueba sustancial o "evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Íd.*, R. 4(i), pág. 3.[10]

Empero, en ciertas situaciones excepcionales, la Regla 31.1 del Reglamento Núm. 8034, *supra*, autoriza el relevo de resoluciones administrativas:

Antes de que expire el término para revisar judicialmente la resolución, a iniciativa propia o a solicitud de parte, el Departamento podrá ordenar la celebración de una nueva vista por cualquiera de los siguientes motivos:

a) cuando se descubriese evidencia esencial, la cual, a pesar de una diligencia razonable, no pudo descubrirse ni presentarse en la vista;

b) cuando la justicia sustancial lo requiera. El Departamento podrá conceder una nueva vista administrativa a todas o cuales quiera de las partes y sobre todas o parte de las cuestiones litigiosa.

*Íd.*, R. 31.1, pág. 34.

Asimismo, ""[e]l Departamento podrá relevar a una parte o a su representante legal de una resolución, orden o procedimiento por las razones y bajo los términos señalados en la Regla 49.2 de Procedimiento Civil, según enmendada". *Íd.*, R.31.3, pág. 34.

---

[10] Además, la ley faculta al DACo para para que conceda los remedios que en derecho correspondan. Pertinente a esto, la Regla 27.1 del Reglamento Núm. 8034, *supra*, dispone lo siguiente:

Toda resolución otorgará el remedio que en derecho proceda aun cuando la parte querellante no lo haya solicitado. Cuando el remedio otorgado sea una orden de hacer o cumplir con un acto determinador deberá contener, (1) cuando surja del expediente o (2) cuando se pueda tener conocimiento administrativo, el importe o valor monetario de la orden, para que[,] en la alternativa de no cumplir con la misma, la parte obligada compense monetariamente.

*Íd.*, R. 27.1, pág. 28.

Por último, la Regla 23 del Reglamento Núm. 8034, *supra,* fija un procedimiento para la imposición de sanciones de haber algún incumplimiento con las órdenes dictaminadas por el DACo, a saber:

> Cuando una Parte dejare de cumplir con un procedimiento establecido en este reglamento, o una orden del Secretario, el Funcionario, Secretario o Panel de Jueces que presida la vista administrativa podrá a iniciativa propia o instancia de parte imponer una sanción económica a favor del Departamento o de cualquier parte, que no excederá de doscientos (200) dólares por cada imposición separada a la parte o a su abogado, si este último es responsable del incumplimiento. Si la parte sancionada incumple con el pago de la sanción se podrá ordenar la **desestimación de la querella si es el querellante o eliminar sus alegaciones si es el querellado**.

*Íd.*, R. 23, pág. 27. (Énfasis suplido).

Es menester recalcar que las normas de los procesos judiciales civiles no aplican rigurosamente a este proceso adjudicativo administrativo. En específico, la Regla 24 del reglamento mencionado dispone lo siguiente:

> Las Reglas de Procedimiento Civil y de Evidencia **no serán de estricta aplicación a las vistas administrativas**, sino en la medida en que el Funcionario o Panel de Jueces que presida la vista o el Departamento estime necesario para llevar a cabo los fines de la justicia.

*Íd.*, R. 24, pág. 27.

## C. Anotación de rebeldía

La anotación de rebeldía tiene como objetivo evitar que se utilice la dilación como estrategia de litigación. *González Pagán et al. v. SLG Moret-Brunet*, 202 DPR 1062, 1069 (2019). Este mecanismo procesal recurre a la coacción contra una parte que, a pesar de que se le dio la oportunidad de refutar una reclamación, opta por no defenderse por pasividad o temeridad. *Ocasio v. Kelly Servs.*, 163 DPR 653, 671 (2005). Con ese propósito, la Regla 45.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 45.1 indica en qué contextos se puede sancionar con la rebeldía:

> Cuando una parte contra la cual se solicite una sentencia que concede un remedio afirmativo haya dejado de presentar alegaciones o de defenderse en otra forma según se dispone en estas reglas, y este hecho se pruebe mediante una declaración jurada o de otro modo, el Secretario o Secretaria anotará su rebeldía.

> El tribunal a iniciativa propia o a moción de parte, podrá anotar la rebeldía a cualquier parte conforme a la Regla 34.3(b)(3).
>
> Dicha anotación tendrá el efecto de que se den por admitidas las aseveraciones de las alegaciones afirmativas, sujeto a lo dispuesto en la Regla 45.2(b).
>
> La omisión de anotar la rebeldía no afectará la validez de una sentencia dictada en rebeldía.

*Íd.*, R. 45.1.

El foro adjudicador puede imponer la anotación de rebeldía cuando el demandante o querellado: (1) no comparece luego de haber sido debidamente emplazado; (2) no presenta una moción para defenderse, o (3) no presenta oportunamente su contestación a la demanda o querella. *Mitsubishi Motor v. Lunor y otros*, 212 DPR 807, 824 (2023); *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 589 (2011). Igualmente, es meritoria la anotación cuando "una de las partes en el pleito ha incumplido con algún mandato del tribunal, lo que motiva a [e]ste a imponerle la rebeldía como sanción". *Álamo v. Supermercado Grande, Inc.*, 158 DPR 93, 100 (2002). En estas instancias:

> Tan pronto se declare la rebeldía[,] se dan por admitidos todos los hechos bien alegados en la demanda o la alegación que se haya formulado en contra del rebelde y se autoriza al tribunal para que dicte sentencia, si esta procede como cuestión de derecho.

*Mitsubishi Motor v. Lunor y otros*, supra, pág. 824; *Rivera Figueroa v. Joe's European Shop*, supra, pág. 590.

Por otro lado, el adjudicador no puede conceder remedios automáticamente solo porque el caso está en rebeldía. *Álamo v. Supermercado Grande, Inc.*, supra, pág. 102. La anotación de rebeldía debe ser justa. De lo contrario, se puede constituir un abuso de discreción. *Rivera Figueroa v. Joe's European Shop*, supra, pág. 590. Por esto, "[p]ese a que la rebeldía constituye un mecanismo procesal discrecional, [e]sta no se sostendrá ante el ejercicio burdo o injusto" de su facultad. *Íd.*

Por ello, existen distintas maneras para dejar sin efecto una anotación de rebeldía errónea. Primero, una parte interesada puede solicitar su levantamiento al amparo de la Regla 45.1 de las de Procedimiento Civil, *supra*. Nuestro más Alto Foro ha entendido esta disposición procesal como sigue:

> [S]i un codemandado a quien se le anota la rebeldía por alegadamente no haber contestado en el término, puede probar que sí había contestado y que la anotación de la rebeldía en su contra obedeció a una confusión por parte del Secretario o la Secretaria ante los múltiples codemandados en el expediente, su remedio es, de igual manera, solicitar que se levante la rebeldía por error en la implementación de la Regla 45.1 de Procedimiento Civil, supra. Esto es, la parte no dejó de presentar alegaciones o de defenderse, sino que la anotación obedeció a un error del tribunal.

*Rivera Figueroa v. Joe's European Shop*, supra, pág. 592.

En este escenario, el "fundamento en derecho para lograr tal levantamiento sería el incumplimiento por parte del promovente con la Regla 45.1 de Procedimiento Civil, *supra*". *Íd.* Por lo tanto, no es necesario probar la presencia de causa justificada.

Si no es de aplicación el análisis anterior, se debe determinar la existencia de justa causa para poder levantar la anotación, según lo dispone la Regla 45.3 de las de Procedimiento Civil, *supra*. Además, se puede dejar sin efecto bajo los parámetros establecidos en la Regla 49.2 de las de Procedimiento Civil, *supra*. Véase *Neptune Packing Corp. v. Wakenhut Corp.*, 120 DPR 283, 293-294 (1988).

**D. Debido proceso de ley en el ámbito administrativo**

El debido proceso de ley es un imperativo de rango constitucional que se activa cuando el Estado actúa contra la vida, libertad o propiedad de un individuo. Art. II, Sec. 7, Const. ELA [Const. PR], LPRA, Tomo 1; Emdas. V y XIV, Const. EE. UU., LPRA, Tomo 1. Esto avala que se respeten las garantías procesales mínimas en los foros judiciales y administrativos. *Com. Elect PPD v. CEE et al.*, 205 DPR 724, 743 (2020); *Aut. Puertos v. HEO*, 186 DPR 417, 428 (2012).

Cabe señalar que, el debido proceso de ley tiene dos dimensiones: la sustantiva y la procesal. La vertiente *sustantiva* preserva y sostiene los derechos fundamentales de las personas. *PVH Motor v. ASG*, 209 DPR 122, 130 (2022). En contraste, el matiz *procesal* exige que, cuando sea vulnerado algún derecho de propiedad o libertad de un ciudadano, el proceso para privarle de alguna de ellas se circunscriba a los principios de justicia e imparcialidad. *Indulac v. Unión*, 207 DPR 279, 296 (2021); *Aut. Puertos v. HEO,* supra, pág. 428.

Conforme a ello, la vertiente procesal de este mandato cuenta con unos parámetros mínimos cuando es aclimatada al entorno adjudicativo: (1) una notificación adecuada; (2) que sea considerado por un juez imparcial; (3) la oportunidad de ser escuchado; (4) el derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) el contar con asistencia de un abogado, y (6) que la determinación se conciba de acuerdo con el expediente. *PVH Motor v. ASG*, supra, pág. 131; *Vázquez González v. Mun. de San Juan*, 178 DPR 636, 643 (2010).

Puntualmente, en lo que concierne a las agencias administrativas, la Sección 3.1 de la LPAU esboza los próximos garantes procesales mínimos: (1) una notificación oportuna de los cargos, querellas o reclamos en contra de una parte; (2) facultad de presentar evidencia; (3) una adjudicación imparcial, y (4) que la decisión esté justificada por el expediente. 3 LPRA sec. 9641. Relacionado con estos derechos, la Sección 3.9 de la LPAU concreta el proceder sobre las notificaciones para los entes administrativos:

> La agencia **notificará por escrito a todas las partes o a sus representantes autorizados e interventores la fecha, hora y lugar en que se celebrará la vista adjudicativa**. La notificación se deberá efectuar por correo, ordinario o electrónico, o personalmente **con no menos de quince (15) días de anticipación a la fecha de la vista**, excepto que, por causa debidamente justificada consignada en la notificación, sea necesario acortar dicho período, y deberá contener la siguiente información:

(a) Fecha, hora y lugar en que se celebrará la vista, así como su naturaleza y propósito.

(b) Advertencia de que las partes podrán comparecer por derecho propio, o asistidas de abogados incluyendo los casos de corporaciones y sociedades.

(c) Cita de la disposición legal o reglamentaria que autoriza la celebración de la vista.

(d) Referencia a las disposiciones legales o reglamentarias presuntamente infringidas, si se imputa una infracción a las mismas, y a los hechos constitutivos de tal infracción.

(e) **Apercibimiento de las medidas que la agencia podrá tomar si una parte no comparece a la vista**.

(f) **Advertencia de que la vista no podrá ser suspendida**.

3 LPRA sec. 9649. (Énfasis suplido).

Asimismo, la Sección 3.10 de la LPAU instruye que, **cuando una parte no comparece a cualquier etapa durante un proceso adjudicativo ante una agencia, el funcionario administrativo que lo preside *podrá declararla en rebeldía* y proseguir con los trámites sin ella**. *Íd.*, sec. 9650. Aunque, es necesario que se le notifique por escrito a la parte sobre el hecho de que se le ha anotado la rebeldía junto con los fundamentos para esta decisión y el recurso de revisión del cual puede beneficiarse. *Íd.*

Sin embargo, existe un interés sistémico en que los casos se diluciden en sus méritos. *Neptune Packing Corp. v. Wackenhut Corp.*, supra, pág. 293. Para garantizar esto, se acoge un "enfoque integral, pragmático y creativo" sobre las normas procesales regentes en estos procedimientos más informales. *Mercado Figueroa v. Mun. San Juan,* 192 DPR 279, 286 (2015). Así, se protege el debido proceso de ley de los involucrados para que estos gocen de su derecho a una tramitación justa. *St. James Sec. v. AEE,* 213 DPR 366, 395 (2023); *Aut. Puertos v. HEO,* 186 DPR 417, 428 (2012).

Discutido el derecho aplicable, este Tribunal se encuentra en posición para resolver las controversias señaladas en el recurso de epígrafe.

**-III-**

En síntesis, Charley Auto alegó que el DACo se equivocó al anotarle la rebeldía sin que se le impusieran medidas menos punitivas primero y al celebrar la vista administrativa en su ausencia. Argumentó además que ha cumplido cabalmente con las órdenes del DACo durante todo el procedimiento y que la incomparecencia a la vista no fue intencionada, sino que se debió a que nunca recibió la notificación cursada por el ente administrativo. Arguyó también que el hecho de que se celebró la vista y se adjudicó el caso sin permitirles presentar prueba a su favor y "tener su día en corte" incidió directamente sobre su derecho a un debido proceso de ley.

Luego de examinar detenidamente el tracto procesal del caso y el marco legal previamente discutido, resolvemos que el DACo no erró al imponer una anotación de rebeldía contra Charley Auto. Veamos.

Según explicamos, el DACo es la agencia gubernamental encargada de procesar las reclamaciones que pueda tener un consumidor sobre la calidad de los productos adquiridos o servicios recibidos. Es deber de esta entidad el investigar la queja recibida y asumir una postura que vindique los derechos del consumidor. Para procesar adecuadamente las querellas instadas por los ciudadanos, el DACo acogió el Reglamento Núm. 8034, *supra*, para uniformar el procedimiento de estas solicitudes. Este reglamento promueve la solución justa, rápida y económica de las querellas bajo su consideración, lo cual responde a la política pública que cobija a las agencias administrativas sobre el acceso a la justicia y la pronta disposición de los asuntos que contemplan.

Durante el procesamiento de una querella, el DACo tiene el deber de cursarle la debida notificación a las partes involucradas. En general, esta debe informar apropiadamente sobre el derecho a la reconsideración o revisión administrativa, el hecho de que, si no

se contesta la querella, habrá consecuencias, y la fecha y el lugar de las respectivas vistas a celebrarse. De esto se desprende que la debida notificación no solo debe respetarse cuando se le advierte al querellado sobre el reclamo en su contra, si no que también para convocar las vistas administrativas que la agencia se proponga celebrar subsiguientemente. Específicamente, la Regla 20.2 del Reglamento Núm. 8034, *supra*, dictamina que:

> El Departamento fijará la fecha y la notificará por escrito a las partes que será no antes de quince (15) días de dicha notificación a menos que las partes pacten otra fecha, con la anuencia del Juez u Oficial Administrativo, Secretario o Panel de Jueces que presida los procedimientos. Se le apercibirá al querellante que si no comparece podrá ordenar la desestimación y archivo de la querella por abandono. **Si el querellado no comparece[,] se podrán eliminar sus alegaciones**. El Departamento **podrá también condenar al pago de honorarios de abogado o dictar cualquier otra orden que en Derecho proceda**.

*Íd.*, R. 20.2, pág. 23. (Énfasis suplido).

De lo anterior, se infiere que el DACo tiene la facultad de imponer sanciones a cualquiera de las partes involucradas si estas no comparecen a una vista administrativa luego de ser debidamente notificadas. En el contexto del querellado, la agencia puede eliminar sus alegaciones si no se presenta el día de la audiencia. Asimismo, la citada regla especifica que se puede condenar al pago de honorarios de abogado o *ejecutar cualquier otra orden que sea procedente en derecho*.

Medularmente, la facultad de las agencias administrativas para anotar la rebeldía de una parte se origina en la Sección 3.10 de la LPAU, la cual dispone lo siguiente:

> Si una parte debidamente citada no comparece a la conferencia con antelación a la vista, o a *cualquier otra etapa durante el procedimiento adjudicativo* el funcionario que presida la misma **podrá declararla en rebeldía y continuar el procedimiento sin su participación, pero notificará por escrito a dicha parte su determinación, los fundamentos para la misma y el recurso de revisión disponible**.

3 LPRA sec. 9650. (Énfasis suplido).

En otras palabras, la incomparecencia de una parte debidamente citada a *alguna* fase del procedimiento adjudicativo, lo cual incluye su presencia en las vistas administrativas, autoriza a la agencia para declararla en rebeldía. Lo neurálgico de esta sección es que debe habérsele cursado a la parte una notificación adecuada que cumpla con los supuestos contenidos en la legislación especial que le compete al ente y en la LPAU. Específicamente, la Sección 3.09 de la LPAU dictamina que un aviso apropiado de una vista debe contener:

> (a) Fecha, hora y lugar en que se celebrará la vista, así como su naturaleza y propósito.
>
> (b) Advertencia de que las partes podrán comparecer por derecho propio, o asistidas de abogados incluyendo los casos de corporaciones y sociedades.
>
> (c) Cita de la disposición legal o reglamentaria que autoriza la celebración de la vista.
>
> (d) Referencia a las disposiciones legales o reglamentarias presuntamente infringidas, si se imputa una infracción a las mismas, y a los hechos constitutivos de tal infracción.
>
> (e) **Apercibimiento de las medidas que la agencia podrá tomar si una parte no comparece a la vista**.
>
> (f) Advertencia de que la vista no podrá ser suspendida.

*Íd.*, sec. 9649. (Énfasis suplido).

El derecho a esta debida notificación antes de anotarle la rebeldía a una parte estriba en el imperativo constitucional del debido proceso de ley. Las agencias administrativas están compelidas a avalar unos garantes procesales mínimos en sus procesos. Concretamente, la Sección 3.1 de la LPAU traza que estos son: (1) una notificación oportuna de los cargos, querellas o reclamos en contra de una parte; (2) facultad de presentar evidencia; (3) una adjudicación imparcial, y (4) que la decisión esté justificada por el expediente. *Íd.*, sec. 9641. Esto significa que, aunque las Reglas de Procedimiento Civil, *supra, no aplican de una manera rigurosa* en los procedimientos adjudicativos ante una agencia porque se aspira a una tramitación rápida, sencilla y accesible del

pleito, se deben respetar las garantías esenciales mencionadas para no rayar en una acción inconstitucional derivada de un abuso de discreción de la entidad. Así, la debida notificación informa a la parte sobre las medidas que se pueden tomar en su contra, lo cual evita que la agencia se exceda de sus facultades al imponer una sanción cuando una parte no comparece a alguna etapa del pleito.

En este caso, el DACo le anotó la rebeldía a Charley Auto por este no presentarse en la vista administrativa celebrada el 13 de diciembre de 2024. Esta determinación quedó plasmada en la *Resolución* dictada y notificada por la agencia el 3 de febrero de 2025. Apéndice de la recurrente, anejo V, págs. 15-25. En este dictamen, el DACo especificó que la anotación se debió a la incomparecencia mencionada, citó la Sección 3.10 de la LPAU como lo que lo faculta a tomar esta acción y detalló el recurso de revisión disponible como remedio, lo cual implica el fiel cumplimiento con los preceptos en la ley.

Al recurrir ante nos, Charley Auto alegó que no recibió la notificación de la vista emitida por el DACo y que, por eso, no compareció a ella. Arguyó además que, el apuntarle la rebeldía sin considerar una sanción menos onerosa y sin haber sido debidamente notificado, laceraba su derecho constitucional a un debido proceso de ley.

No obstante, Charley Auto *sí* fue notificado de la vista celebrada por la agencia y esta le apercibió sobre la consecuencia que tendría el no presentarse a ella. En su *Resolución*, el DACo hizo hincapié en el hecho de que la notificación fue remitida a las direcciones que surgían del récord y que *no fueron devueltas por el servicio postal*, por lo que se *presumieron como recibidas*. Cabe señalar que, este aviso, intitulado *Citación a Vista Administrativa*, el cual fue extraído del propio expediente del caso en el DACo luego de

que este fuese elevado, contenía la siguiente advertencia en su cuarta página:

> Se apercibe a la parte querellante que[,] de ser ella la parte que solicita la suspensión [de la vista], se entenderá que ha renunciado al término establecido por ley para resolver su querella y el Departamento señalará la nueva vista en [la] fecha que estime conveniente. **Se apercibe a la parte querellada que[,] de no comparecer a la vista [y] de estimarse [como] probados los hechos de la querella, se procederá a dictar el remedio que proceda conforme a derecho,** *sin más citarle ni oírle*.

(Énfasis suplido).

Si la notificación emitida por el DACo, que era suficiente en derecho, fue recibida y Charley Auto fue advertido de que se le anotaría la rebeldía si no comparecía a la vista, es improcedente el argumento de la recurrente sobre que se celebró la audiencia sin su conocimiento, sin considerar sanciones menos severas y sin permitirle presentar prueba a su favor, todo esto en violación a su derecho a un debido proceso de ley. Como se desprende de la *Resolución*, la notificación de la vista no fue devuelta por el correo, por lo cual se presume como recibida. Esta notificación le advertía, con suficiencia en derecho, las consecuencias de su incomparecencia a la audiencia. Además, el dictamen dispositivo promulgado por el DACo perfila adecuadamente el fundamento de su determinación ante la ausencia de Charley Auto en la vista convocada.

En conclusión, no hubo violación al debido proceso de ley de Charley Auto porque se le notificó conforme a derecho sobre el efecto que tendría su incomparecencia a la vista celebrada el 13 de diciembre de 2024 y porque el DACo tiene la facultad de anotarle la rebeldía al querellado que no comparezca a alguna de las etapas del procedimiento administrativo, conforme a la Sección 3.10 de la LPAU. Sencillamente dicho, la determinación final del DACo se hizo respetando el debido proceso de ley de Charley Auto según lo

dispuesto para este tipo de casos en la LPAU y el reglamento de la agencia.

Colegimos pues que, en el caso ante nuestra consideración, el recurrente no derrotó la presunción de corrección en cuanto la decisión administrativa, conforme con la LPAU y la reglamentación aplicable. De este modo, solo plasmó unas alegaciones que no demostraron que el DACo actuó de manera irrazonable, ilegal o de forma arbitraria en su determinación. En virtud de la deferencia que debemos al foro administrativo y la falta de evidencia que logre rebatir la presunción de corrección que le asiste a la determinación recurrida, resolvemos que procede confirmar la misma.

**-IV-**

Por los fundamentos expuestos, se **confirma** la determinación del Departamento de Asuntos del Consumidor.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones