Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| LOIDA N. NAZARIO LÓPEZ<br><br>Parte Recurrida<br><br>v.<br><br>SUNRUN PR OPERATIONS LLC<br><br>Parte Recurrente | TA2026RA00052 | *Revisión Administrativa* procedente del Departamento de Asuntos del Consumidor<br><br>Caso Núm. MAY-2025-0005714<br><br>Sobre: Contrato de obras y servicios |
| --- | --- | --- |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

Rodríguez Flores, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 7 de abril de 2026.

Comparece ante nos, SUNRUN PR OPERATIONS, LLC y/o SUNRUN, INC. (Sunrun) mediante recurso de *revisión* y solicita que examinemos la *Resolución* emitida el 25 de noviembre de 2025, y notificada el 2 de diciembre de 2025, por el Departamento de Asuntos del Consumidor (DACo).[1] Mediante el referido dictamen, el foro administrativo declaró *ha lugar* la querella instada por la Sra. Loida Nazario López (señora Nazario López) contra Sunrun y, en consecuencia, ordenó, *inter alia,* la cancelación inmediata del contrato suscrito entre ambas partes.

Examinado el escrito a la luz del derecho aplicable, y por los fundamentos que expondremos a continuación, se revoca la *Resolución* recurrida.

**I.**

Según surge del expediente, el caso de autos se originó el 6 de mayo de 2025, cuando la señora Nazario López incoó una querella

---

[1] *Recurso de revisión*, SUMAC-TA del recurso TA2026RA00052, Entrada 1.

(MAY-2025-0005714) contra Sunrun al amparo de la Ley Núm. 5 de 23 de abril de 1973, según enmendada, conocida como la *Ley Orgánica del Departamento de Asuntos del Consumidor*, 3 LPRA sec. 341, *et seq.*[2]

En esencia, alegó que, en junio de 2024, un vendedor identificado como Luis Enrique, le ofreció un sistema de placas solares, indicándole que luego de tres (3) meses de instaladas, pagaría solo cuatro dólares ($4) mensuales a LUMA Energy. Sin embargo, la señora Nazario López aseveró que, transcurrido el tiempo indicado, continuó pagando más de cien dólares ($100) mensuales a LUMA Energy. Sostuvo que nunca se le entregó copia del contrato y añadió que solicitó una inspección porque tenía entendido que el sistema solar estaba mal instalado, pero sus reclamos nunca fueron atendidos por la compañía. Por tal razón, solicitó al DACo que se realizara una nueva evaluación para que se le otorgara la medición neta o, en el caso de que ello no fuese posible, que el contrato fuese cancelado.

El 8 de julio de 2025, notificada por correo el 11 de julio de 2025, DACo informó a las partes una *Notificación de Vista Administrativa,* a celebrarse el 6 de agosto de 2025, en la Oficina Regional de Mayagüez, ubicada en el Centro Gubernamental del referido municipio.[3]

Posteriormente, el 15 de julio de 2025, Sunrun presentó una *Moción Asumiendo Representación Legal* a través del Sistema Integrado Asunto del Consumidor (SIAC). Mediante ésta, solicitó que todas las notificaciones le fueran remitidas a su correo electrónico y dirección postal, y también requirió que se le brindara acceso al sistema electrónico para poder acceder al expediente legal.[4] Sin

---

[2] *Querella, Íd.*, Apéndice, Entrada 3.
[3] *Notificación de Vista Administrativa, Íd.*, Apéndice, Entrada 4.
[4] *Moción Asumiendo Representación Legal, Íd.*, Apéndice, Entrada 5.

embargo, debido a que no recibió respuesta por parte del foro administrativo, la representación legal de Sunrun reiteró su petición mediante dos escritos adicionales presentados el 24 de julio de 2025[5] y el 29 de julio de 2029[6], los cuales tampoco fueron atendidos.

Así las cosas, el 6 de agosto de 2025, DACo celebró la vista administrativa, con la comparecencia únicamente de la señora Nazario López y su hija, la Sra. Keila Nazario López, y procedió a anotar la rebeldía a la parte querellada, a saber, Sunrun.

El 28 de agosto de 2025, el foro administrativo finalmente atendió las mociones mediante las cuales Sunrun solicitó asumir representación legal y las declaró *ha lugar*.[7]

Posteriormente, el 25 de noviembre de 2025, notificada el 2 de diciembre de 2025, el foro administrativo emitió la *Resolución* aquí recurrida.[8] Mediante el referido dictamen, DACo declaró *ha lugar* a la querella y, en consecuencia, ordenó la cancelación inmediata del contrato entre las partes y de los débitos automáticos a la cuenta bancaria de la señora Nazario López. Asimismo, le ordenó a Sunrun reembolsar las cantidades cobradas y debitadas de la cuenta de la señora Nazario López desde junio de 2024 y, posteriormente, remover, a su costo, el sistema de placas del techo de la residencia de la querellante, sin provocar daños a la estructura ni a los equipos instalados en la misma. A su vez, DACo formuló las siguientes determinaciones de hechos:

1. El Sr. Idelfonso Almodóvar, esposo de la Sra. Loida Nazario, contactó a un vendedor identificado únicamente como Luis Enrique, quien indicó ser representante de una empresa de sistemas solares, posteriormente identificada como Sunrun o subcontratada por Bright Panel Solar.

2. La Sra. Loida Nazario López, de 82 años, contrató verbalmente la instalación de un sistema de placas solares con un vendedor identificado como "Luis

---

[5] *Moción Asumiendo Representación Legal, Íd.*, Apéndice, Entrada 6.
[6] *Moción Asumiendo Representación Legal, Íd.*, Apéndice, Entrada 7.
[7] *Notificación del DACo acogiendo Moción Asumiendo Representación Legal, Íd.*, Apéndice, Entrada 8.
[8] *Resolución, Íd.*, Apéndice, Entrada 2.

Enrique", sin recibir contrato escrito ni orientación clara.

3. Se prometió que la factura de LUMA Energy se reduciría a aproximadamente $4 mensuales y que se otorgaría un incentivo de $1,000; la reducción nunca ocurrió y el incentivo solo se entregó tras múltiples gestiones.

4. El sistema fue instalado en junio de 2024, pero presenta deficiencias técnicas; no produce energía suficiente, no está correctamente conectado y la batería no funciona adecuadamente.

5. Desde junio de 2024 se han debitado $134.40 mensuales de la cuenta de la querellante sin autorización válida ni desglose de facturación según prueba testifical de querellante sin que exista documento contractual entregado ni desglose de facturación disponible.

6. Las facturas de LUMA presentadas como evidencia muestran cargos constantes entre $100 y $270, muy superiores a lo prometido.

7. El sistema fue instalado sin que se entregara copia del contrato, factura, recibo ni orientación clara a la Sra. Nazario ni a su familia.

8. El vendedor no se identificó adecuadamente, ni proveyó datos de contacto profesionales (ej. tarjeta de presentación, nombre legal completo, afiliación empresarial clara).

9. La señora Loida Nazario, de 82 años, firmó o autorizó verbalmente la contratación e instalación sin comprender los términos completos, bajo presiones del vendedor, según el testimonio ofrecido. Sobre las condiciones prometidas:

10. Se prometió que en o antes de tres (3) meses tras la instalación, la factura de LUMA Energy sería de aproximadamente $4 mensuales como resultado del programa de medición neta.

11. También se ofreció un incentivo económico de $1,000, que solo fue entregado luego de múltiples gestiones de Keila Nazario con oficinas en los Estados Unidos.

12. La parte querellante nunca recibió factura física o electrónica inicial, ni accedió a ninguna plataforma o aplicación para monitorear la producción del sistema instalado. Sobre la titularidad de servicios y problemas técnicos.

13. El contrato de energía eléctrica con LUMA está a nombre de la hija Keila Nazario, pero el sistema solar se instaló a nombre de su madre, Loida Nazario.

14. No consta autorización formal para usar el nombre de Keila en la transacción, ni consentimiento informado.

15. El sistema fue instalado en junio de 2024. Hasta la fecha de la vista, nunca se ha reflejado una reducción significativa en las facturas de LUMA, que continúan promediando entre $100 y $270 mensuales.

16. LUMA notificó que la producción neta del sistema es mínima o deficiente, posiblemente por problemas de instalación.

17. Un técnico de LUMA que visitó el hogar el 26 de marzo de 2025, confirmó que el sistema no está debidamente conectado o configurado y que la batería no ofrecía carga suficiente para sostener el uso y enviar energía a la red.

18. Sobre servicio al cliente y facturación: La querellante ha hecho múltiples intentos de comunicación con Sunrun y Bright Planet Solar, sin resultados positivos.

19. Reportó haber sido objeto de trato irrespetuoso, transferencias de llamadas constantes y desconexiones sin respuesta.

20. La Sra. Nazario desconocía desde cuándo comenzó el débito y no tiene acceso fácil a su cuenta en línea.

21. La hija Keila testificó que solicitó repetidamente cancelación del contrato, inspección técnica y aclaración del sistema de monitoreo, sin recibir asistencia efectiva.

22. Se admitieron como evidencia las siguientes facturas de LUMA Energy: Exhibit 1: 20 de noviembre de 2024 ·Exhibit 2: 19 de diciembre de 2024 · Exhibit 3: 22 de julio de 2025 · Exhibit 4: 25 de agosto de 2025.

23. Todas las facturas evidencian facturación constante por montos significativamente superiores a los $4 prometidos, incluso tras el periodo de activación de la medición neta.

24. La parte querellada no compareció ni presentó evidencia alguna en defensa de su gestión.

25. La parte querellante ha cumplido con su carga inicial de prueba mediante testimonio creíble, documentación parcial y disposición para entregar evidencia adicional.

26. La conducta alegada de Sunrun y/o sus representantes podría constituir una violación al deber de buena fe contractual, prácticas engañosas bajo la Ley Núm. 5 de 23 de abril de 1973 (Ley

Orgánica del DACO), y al Reglamento de Prácticas Comerciales 9158, entre otras. La parte querellante presentó reclamación contra la parte querellada por alegado incumplimiento de contrato verbal y/o inducido respecto a la instalación de un sistema de placas solares en su residencia.

[...]

En desacuerdo con la determinación, el 22 de diciembre de 2025, Sunrun presentó una *Moción de Reconsideración* ante el foro administrativo.[9] No obstante, DACo no se pronunció sobre la misma en el término dispuesto por ley, entendiéndose que esta fue rechazada de plano.

Insatisfecha aún, el 5 de febrero de 2026, la parte recurrente acudió ante este foro revisor mediante *Recurso de Revisión* señalando que el foro administrativo cometió los siguientes errores:

A. ERRÓ EL DACO AL NO RECONSIDERAR LA RESOLUCIÓN EMITIDA AL INCLUMPLIR CON LOS DOCUMENTOS GUÍAS, ESTABLECIDOS COMO REGLAMENTARIOS POR EL HONORABLE TRIBUNAL SUPREMO, SOBRE LOS PROCEDIMIENTOS QUE RIGEN EL USO DEL SISTEMA INTEGRADO DE ASUNTOS DEL CONSUMIDOR.

B. ERRÓ EL DACO AL NO DECLARAR CON LUGAR LAS MOCIONES ASUMIENDO REPRESENTACIÓN LEGAL POR PARTE DE LOS ABOGADOS DE LOS RECURRENTES, PRESENTADAS PREVIO A LA CELEBRACIÓN DE LA VISTA ADMINISTRATIVA, SEGÚN REQUERIDO POR LOS DOCUMENTOS GUIAS DE SIAC.

C. ERRÓ EL DACO AL NO ACEPTAR LAS MOCIONES ASUMIENDO REPRESENTACIÓN LEGAL PRESENTADAS POR LOS RECURRENTES PREVIO A LA CELEBRACIÓN DE LA VISTA ADMINISTRATIVA AL ESTO PRIVARLE DE ACCESO AL SISTEMA DE ARCHIVO ELECTRONICO DE SIAC.

D. ERRÓ EL DACO AL NO TENER UNA COPIA DEL EXPEDIENTE DE LA QUERELLA EN EL SISTEMA DE ARCHIVO ELECTRÓNICO SIAC.

E. ERRÓ EL DACO AL NOTIFICAR LA RESOLUCIÓN A UNA DIRECCIÓN INCORRECTA Y NO NOTIFICAR LA MISMA A LOS ABOGADOS QUE COMPARECIERON EN REPRESENTACIÓN DE LOS RECURRENTES.

---

[9] *Moción de Reconsideración, Íd.*, Apéndice, Entrada 6.

F. ERRÓ EL DACO AL DECLARAR EN REBELDÍA A LOS RECURRENTES CUANDO PRESENTARON SUS MOCIONES ASUMIENDO REPRESENTACIÓN LEGAL Y LAS MISMAS NO FUERON ACOGIDAS OPORTUNAMENTE Y OBVIADAS HASTA LUEGO DE TRANSCURRIDAS TRES SEMANAS DESDE CELEBRADA LA VISTA.

G. ERRÓ EL DACO AL NO DESESTIMAR LA QUERELLA POR FALTA DE JURISDICCIÓN AL EXISTIR UNA CLÁUSULA DE ARBITRAJE QUE LOS PRIVA DE JURISDICCIÓN.

Notificado el recurso y expirado el término dispuesto en la Regla 63 del Reglamento de Tribunal de Apelaciones[10], Loida N. Nazario López no compareció en oposición. El DACo solo compareció elevando copia del expediente administrativo.

## II.

### A.

Es norma firmemente establecida que los tribunales apelativos han de conceder gran consideración y deferencia a las decisiones de los organismos administrativos. Ello, dado que las agencias administrativas cuentan con vasta experiencia y conocimiento especializado en cuanto a los asuntos que les han sido encomendados.[11] Así, al igual que otras decisiones administrativas, a los procesos de adjudicación de subastas le aplican los mismos principios de deferencia en cuanto al alcance de la revisión judicial.[12]

Como resultado, la decisión de una agencia administrativa gozará de una presunción de legalidad y corrección que será respetada, siempre que la parte que la impugna no produzca evidencia suficiente para rebatirla.[13]

---

[10] Regla 63 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025).

[11] *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 839 (2021), citando a *OCS v. Universal*, 187 DPR 164, 178 (2012); *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 821 (2012); *Pagán Santiago et al. v. ASR*, 185 DPR 341, 358 (2012).

[12] *Accumail PR v. Junta Sub. AAA,* 170 DPR 821, 828-829 (2007).

[13] *Transp. Sonnell, LLC v. Jta. Subastas ACT,* 214 DPR 633, 648 (2024); *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012).

En cuanto a las determinaciones de hecho que realiza una agencia, éstas serán sostenidas por el tribunal si se basan en evidencia sustancial que obra en el expediente administrativo.[14] Por evidencia sustancial se entiende "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[15] Por lo tanto, la parte afectada por la decisión administrativa deberá reducir el valor de la evidencia impugnada o demostrar la existencia de otra prueba que sostenga que la actuación del ente administrativo no estuvo basada en evidencia sustancial.[16]

Ahora bien, respecto a las conclusiones de derecho de las decisiones de las agencias administrativas, la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38-2017, señala que éstas pueden ser revisadas en todos sus aspectos por el tribunal.[17]

Al respecto, recientemente, en *Vázquez et al. v. DACo*[18], el Tribunal Supremo hizo eco de la decisión del foro federal en el caso *Loper Bright Enterprises v. Raimondo*[19], y determinó que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. En *Vázquez,* el Tribunal Supremo enfatizó la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU, *supra.* Puntualizó que, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos. Con ello, nuestro Tribunal Supremo pautó el fin de la

---

[14] *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38-2017, 3 LPRA sec. 9675.

[15] *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018); *González Segarra et al. v. CFSE*, 188 DPR 252, 277 (2013); *Otero v. Toyota*, 163 DPR 716, 728 (2005).

[16] *Otero v. Toyota*, supra, pág. 728.

[17] Sec. 4.5 de la LPAU, 3 LPRA sec. 9675.

[18] *Vázquez et al. v. DACo*, 216 DPR ___ (2025), 2025 TSPR 56 (resuelto el 21 de mayo de 2025).

[19] *Loper Bright Enterprises v. Raimondo,* 603 US 369, 144 S. Ct. 2244, 219 L.Ed.2d 832 (2024).

deferencia absoluta a las apreciaciones de derecho arribadas por las agencias administrativas.[20] En fin, delimitó que la interpretación de la ley es una tarea que le corresponde a los tribunales y como corolario, los tribunales deben revisar las conclusiones de derecho en todos sus aspectos. Ello, como mecanismo interpretativo del poder judicial.[21]

Por consiguiente, la deferencia concedida a las agencias administrativas únicamente cederá cuando: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales.[22]

**B.**

El DACo fue creado como una agencia especializada con el propósito primordial de vindicar e implantar los derechos del consumidor y proteger los intereses de los compradores.[23] Este organismo tiene el deber de implementar una estructura de adjudicación administrativa mediante la cual se considerarán las querellas de los consumidores y se concederán los remedios pertinentes conforme al derecho aplicable.[24]

La Regla 8.1 del *Reglamento de Procedimientos Adjudicativos del DACo*, Reglamento Núm. 8034 de 13 de julio de 2011

---

[20] *Vázquez et al. v. DACo*, supra.
[21] *Íd.*
[22] *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012).
[23] Ley Núm. 5 del 23 de abril de 1973, según enmendada, conocida como la *Ley Orgánica del Departamento de Asuntos del Consumidor*, 3 LPRA secs. 341 (a)(b).
[24] *Íd.*, 3 LPRA sec. 341e (d).

(Reglamento Núm. 8034), le reconoce a dicha agencia la facultad para anotar la rebeldía cuando el querellado no contesta la querella en el término de veinte (20) días a partir de la notificación de esta. Dicha potestad surge a su vez de la Sección 3.10 de la LPAU, la cual dispone que "[s]i una parte debidamente citada no comparece a la conferencia con antelación a la vista, o a cualquier otra etapa durante el procedimiento adjudicativo el funcionario que presida la misma podrá declararla en rebeldía y continuar el procedimiento sin su participación".[25]

Cabe destacar que, como norma general, las Reglas de Procedimiento Civil no aplican automáticamente a los procedimientos administrativos.[26] No obstante, es norma reiterada que nada impide que en casos apropiados se adopten normas de las Reglas de Procedimiento Civil para guiar el curso del proceso administrativo, cuando las mismas no sean incompatibles con dicho proceso y propicien una solución justa, rápida y económica.[27] Así, el Tribunal Supremo ha pautado que la figura de la rebeldía es compatible con el procedimiento administrativo.[28]

Sobre la figura de la rebeldía, el Tribunal Supremo de Puerto Rico ha expresado que esta se define como la posición procesal en que se coloca la parte que ha dejado de cumplir un deber procesal o de ejercitar su derecho de defenderse.[29] El propósito de la anotación de rebeldía es disuadir a aquellos que recurran a la dilación de los procedimientos como una estrategia de litigación.[30]

La consecuencia de una anotación de rebeldía es que se den por admitidas todas las alegaciones sobre hechos correctamente

---

[25] 3 LPRA sec. 9650.

[26] *OEG v. Rodríguez*, 159 DPR 98, 112 (2003); *Pérez v. VPH Motor Corp.*, 152 DPR 475, 484 (2000).

[27] *Hosp. Dr. Domínguez v. Ryder*, 161 DPR 341, 346 (2004).

[28] *Freyre Martínez v. Consejo de Titulares y/o Junta de Directores del Condominio Sol y Playa*, 217 DPR ___ (2026), 2026 TSPR 20 (resuelto el 5 de marzo de 2026).

[29] *Rodríguez v. Rivera*, 155 DPR 838, 848 (2002).

[30] *Martínez v. Inst. Cardiopulmonar*, 213 DPR 221, 228 (2023); *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 587 (2011).

alegados en la demanda o la alegación que se haya formulado en contra del rebelde. Así, la causa de acción podrá continuar dilucidándose sin su participación.[31] No obstante, el foro adjudicativo podrá dictar sentencia en rebeldía solo si concluye que procede la concesión del remedio solicitado.[32]

Ahora bien, la Regla 45.3 de Procedimiento Civil[33], establece que el tribunal podrá dejar sin efecto una anotación de rebeldía por causa justificada. Para probar la "causa justificada" la parte puede presentar evidencia de circunstancias que a juicio del tribunal demuestren justa causa para la dilación en contestar la demanda, o probar que tiene una buena defensa en sus méritos y que el grado de perjuicio que se puede ocasionar a la otra parte con relación al proceso es razonablemente mínimo.[34]

Sin embargo, aunque la facultad de un foro de instancia para dejar sin efecto una anotación de rebeldía al amparo de la Regla 45.3 de Procedimiento Civil, *supra*, se enmarca en la existencia de justa causa según los parámetros expuestos, en *Díaz v. Tribunal Superior*[35] el Tribunal Supremo señaló que esta regla se debe interpretar de manera liberal, por lo que cualquier duda deberá resolverse a favor de que se deje sin efecto la anotación de rebeldía.[36] Acorde con este principio, nuestra jurisprudencia favorece que los casos se ventilen en sus méritos.[37]

## C.

Bajo nuestro ordenamiento constitucional, sabido es que ninguna persona puede ser privada de su propiedad sin el debido

---

[31] *González Pagán v. SLG Moret-Brunet,* 202 DPR 1062, 1069 (2019); *Banco Popular v. Andino Solís*, 192 DPR 172, 179 (2015); *Rivera Figueroa v. Joe's European Shop*, supra, pág. 590.

[32] *Martínez v. Inst. Cardiopulmonar*, supra, pág. 229; *González Pagán v. SLG Moret-Brunet,* supra, pág. 1069; *Banco Popular v. Andino Solis*, supra, pág. 179.

[33] 32 LPRA Ap. V, R. 45.3.

[34] *Rivera Figueroa v. Joe's European Shop*, supra, pág. 593.

[35] 93 DPR 79 (1966).

[36] *Rivera Figueroa v. Joe's European Shop*, supra, págs. 591-592.

[37] *Íd.,* pág. 591.

proceso de ley.[38] Como bien conocemos, el debido proceso de ley tiene dos vertientes: la sustantiva y la procesal.[39] En cuanto a la modalidad procesal, se les exige a los componentes del Estado garantizar que, al interferir con los intereses propietarios de un individuo, lo hagan a través de un procedimiento justo y equitativo.[40]

Como corolario de este mandato constitucional, el Tribunal Supremo de Puerto Rico ha reiterado que en los procedimientos adjudicativos deben observarse las siguientes garantías mínimas: (1) **notificación adecuada del proceso**; (2) proceso ante un juez imparcial; (3) **oportunidad de ser oído**; (4) derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) tener asistencia de un abogado; y (6) que la decisión se base en el récord.[41]

Ahora bien, en el ámbito administrativo, el debido proceso de ley no ostenta la misma rigidez que en los procedimientos adjudicativos ante los tribunales.[42] Esto responde a la necesidad que tienen las agencias administrativas de tramitar sus procedimientos de forma expedita y a la pericia que se presume tienen para atender y resolver los asuntos delegados.[43] Sin embargo, el Tribunal Supremo ha reiterado, que en los procedimientos adjudicativos que se realizan en la esfera administrativa, deben ser justos y tienen que ceñirse a las garantías mínimas del debido proceso de ley.[44]

Cónsono con lo anterior, la Sec. 3.1 de la Ley Núm. 38-2017, *supra,* expone que en los procesos adjudicativos llevados a cabo en

---

[38] Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1; Emdas. V y XIV, Const. EE. UU., LPRA, Tomo 1; *Román Ortiz v. OGPe,* 203 DPR 947, 953 (2020).
[39] *Fuentes Bonilla v. ELA et al.,* 200 DPR 364, 394 (2018); *Rodríguez Rodríguez v. ELA,* 130 DPR 562, 575 (1992).
[40] *Román Ortiz v. OGPe,* supra, pág. 953.
[41] *Íd.*, pág. 954. (Énfasis nuestro).
[42] *Íd.*
[43] *Íd.*
[44] *Íd.*

las agencias administrativas tienen que cumplir con determinadas garantías procesales mínimas, a saber: 1) derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte; 2) derecho a presentar evidencia; 3) derecho a una adjudicación imparcial; y 4) derecho a que la decisión sea basada en el expediente.[45]

### III.

Por estar estrechamente relacionados los errores señalados en el recurso de revisión bajo nuestra consideración como A, B, C, D, E y F, procedemos a discutirlos en conjunto.

En su recurso, el recurrente esencialmente sostiene que DACo erró al anotarle la rebeldía y continuar con la celebración de la vista administrativa, sin haber atendido oportunamente las mociones mediante las cuales sus abogados asumían su representación legal. Asimismo, plantea que el foro administrativo incumplió con los documentos guías que rigen el uso del SIAC, al no tener una copia del expediente de la querella en el archivo digital y tampoco proveerle acceso al expediente electrónico, ni notificar adecuadamente los procesos del caso.

Como es sabido, los procedimientos administrativos deben observar las garantías mínimas del debido proceso de ley, entre las cuales se encuentran la notificación adecuada de los procedimientos y la oportunidad real de ser oído.[46] A su vez, las agencias administrativas están obligadas a observar las normas y procedimientos que ellas mismas han establecido para la tramitación de los casos ante su consideración[47], incluyendo aquellos documentos guías relacionados con el uso de los servicios en línea para los procedimientos adjudicativos.[48]

---

[45] 3 LPRA sec. 9641.
[46] *PVH Motor v. ASG*, 209 DPR 122, 131 (2022).
[47] Hernández Chiquez v. FSE, 152 DPR 941, 952 (2000).
[48] *Tricoche, Rivera v. Luis Freire*, 216 DPR ___ (2025), 2025 TSPR 92 (resuelto el 1 de octubre de 2025).

Del expediente ante nuestra consideración se desprende que los abogados del recurrente presentaron oportunamente varias mociones asumiendo representación legal a través del SIAC, ello previo a la celebración de la vista administrativa señalada para el 6 de agosto de 2025. Mediante dichos escritos, solicitaron, además, que todas las notificaciones posteriores del caso les fueran cursadas a sus direcciones electrónicas y postales, así como requirieron acceso al expediente electrónico del caso. Sin embargo, a pesar de lo anterior, el foro administrativo no atendió dichas mociones antes de la celebración de la vista. Así, procedió a celebrar la vista administrativa en la fecha señalada, con la comparecencia únicamente de la parte querellante, y a anotar la rebeldía al recurrente. Además, no fue sino hasta el 28 de agosto de 2025, esto fue, después de celebrada la vista administrativa, que el foro administrativo atendió las mociones mediante las cuales los abogados del recurrente asumían su representación legal.

Tal actuación por parte del foro administrativo resulta incompatible con nuestro ordenamiento jurídico. Recordemos que la anotación de rebeldía "opera como un remedio coercitivo contra una parte adversaria a la cual, habiéndosele concedido la oportunidad de refutar la reclamación, por su pasividad o temeridad opta por no defenderse."[49] Sin embargo, en este caso el expediente refleja que el recurrente no solo compareció oportunamente a través de sus representantes legales, sino que también solicitó formalmente acceso al expediente legal antes de la celebración de la vista administrativa. La discreción para anotar la rebeldía no se sostiene ante el ejercicio burdo o injusto.[50] El hecho de que el foro administrativo no atendiera dichas mociones oportunamente no

---

[49] *Ocasio v. Kelly Servs.*, 163 DPR 653, 671 (2005); *Álamo v. Supermercado Grande, Inc.*, 158 DPR 93, 101 (2002);
[50] *Freyre Martínez v. Consejo de Titulares y/o Junta de Directores del Condominio Sol y Playa*, supra.

puede operar en detrimento de la parte que procuró comparecer conforme a derecho. Más aun, al no tramitar las referidas mociones antes de la vista, el foro administrativo privó al recurrente de tener acceso al expediente electrónico del caso y, por ende, de una participación efectiva en el proceso en su contra.

En virtud de lo antes expuesto, resulta evidente que DACo erró al celebrar la vista administrativa en ausencia del recurrente y al anotarle la rebeldía, sin haber atendido previamente las mociones de representación legal oportunamente presentadas. En tales circunstancias, la anotación de rebeldía carece de fundamento en el expediente y resulta incompatible con las garantías básicas del debido proceso de ley que deben regir toda adjudicación administrativa. En suma, se cometieron los errores señalados por Sunrun. Por tal razón, colegimos que procede revocar la *Resolución* recurrida y devolver el caso al foro administrativo para la celebración de una nueva vista administrativa, en la cual se garantice a las partes la oportunidad de comparecer y presentar prueba conforme a derecho.

Adviértase además que DACo deberá dar fiel cumplimiento a las disposiciones contenidas en sus diferentes normativas respecto al uso de servicios en línea para los procedimientos adjudicativos. Según resuelto por nuestro más Alto Foro, mientras dicho foro no reglamente formalmente el uso de la plataforma electrónica como lo requiere la Ley Núm. 16 de 14 de mayo de 2025, las pautas que guían al usuario sobre el uso del sistema poseen vigencia provisional.[51] De forma que, "no pueden perjudicarse los derechos de [una parte] porque la agencia faltó a la obligación de revisión periódica de sus reglamentos requerido por la Sec. 2.19 de la LPAU

---

[51] *Tricoche, Rivera v. Luis Freire*, supra.

y [dicha parte] confió en las directrices del DACo" para comparecer en el proceso presentado en su contra.[52]

Por motivo de que procede que se revoque la *Resolución* recurrida, se torna innecesaria la discusión del último señalamiento de error.

**IV.**

Por los fundamentos que anteceden, se revoca la *Resolución* emitida el 25 de noviembre de 2025, notificada por correo el 2 de diciembre de 2025, por el Departamento de Asuntos al Consumidor. En su consecuencia, se levanta la anotación de rebeldía contra Sunrun, y se devuelve el caso al foro primario para la continuación de los procedimientos conforme a lo resuelto.

Notifíquese.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[52] *Íd.*